Texas & New Orleans Railroad Company et al. v.
Elzy A. Gardner.

Decided May 19, 1902.

**Master and Servant—Injury From Poisonous Substances—Allegation and Proof.**

Where a servant who was injured by poison while employed in working about a vat did not allege in his petition that his injuries were due to any particular poison contained in the liquid, but averred generally that it contained the several chemicals and metallic poisons as shown by the evidence, and his physicians testified that he suffered from metallic and chemical poison due to his work about the vat, but they could be certain of only the poisons lead and potash, it was not error for the court to refuse to take from the consideration of the jury any other harmful substances save lead and potash to which plaintiff was exposed.

Error from Harris.    Tried below before Hon. Wm. H. Wilson.

*Baker, Botts, Baker & Lovett* and *A. L. Jackson,* for plaintiffs in error.

*Lovejoy & Malevinsky,* for defendant in error.

GILL, Associate Justice.—This is an action for damages for personal injuries alleged to have been sustained by the plaintiff, Elzy A. Gardner, through the negligence of the agents and officers of the Texas & New Orleans Railroad Company and the Galveston, Harrisburg & San Antonio Railway Company, who were joined as defendants below. The negligence complained of was the failure of the agents of defendants to warn plaintiff of the poisonous nature of certain ingredients used in a vat of boiling liquid of which, as employe of defendants, he was placed in charge, and with and about which his duties required him to work. His injuries are alleged to have been due to metallic and chemical poison taken into his system both by contact with them and the liquid containing them and by inhaling the noxious vapors arising therefrom.

Defendants answered, (1) by general denial; (2) that plaintiff knew the nature of the ingredients and character of the work and assumed the risk of injury therefrom; (3) that the injuries complained of were due to plaintiff's own inherent weakness and disease, and knowing his physical condition was guilty of contributory negligence in exposing himself to the hardships incident to his work.

A trial by jury resulted in a verdict and judgment for plaintiff, from which defendants prosecute this writ of error.

The facts are as follows:  The defendants maintained at their shops in the city of Houston a large vat called a lye tub, for the purpose of cleaning parts of engines and other machinery.  This vat had a capacity of between one and two thousand gallons and its depth was over three feet.  Connected with it was a machine operated by compressed air for use in lifting weights too heavy to be handled by hand.  Tongs were supplied for handling smaller pieces.  It was the duty of the employe in charge to keep the vat filled with a liquid designed for the purpose and by the addition from time to time of certain chemicals supplied by the defendants to keep the contents of the vat up to a certain strength in order that it might effectively dissolve and clear away the dirt, grease, and other foreign matter which accumulates upon machinery by use. This liquid was kept at 212 degrees Fahrenheit by a coil of steam pipe in the bottom of the vat.

The pieces cleaned in this vat were of steel, iron, or copper, and some of them contained paint, one of the ingredients of which is white lead. This paint would be removed and dissolved in the liquid when the pieces were immersed therein.  The main body of the liquid was procured from hoppers filled with ashes over which water was poured, the product running into the vat in the form of ordinary lye.  To increase the strength

of this it was necessary to use "boiler compound," the active ingredient of which was caustic soda. This was sometimes put into the vat in lumps and sometimes in solution previously prepared by the company and kept in quantity for the purpose.

A steam jet was used to expel from the machinery any particles of dirt, grit, or paint or other foreign substance which might remain thereon after it was taken from the vat. In using this, if the piece was smooth and round the particles would be blown away from the person using it, but if the piece was hollow or irregular in form the particles, together with such quantities of the liquid as adhered, would be blown back on the hands, face, and clothing of the person using it. Vapors arose from the boiling liquid which were necessarily inhaled by the person in charge of the work. The labor was heavy and disagreeable.

On the 18th of July, 1898, plaintiff sought employment of the defendant and was placed in charge of the vat, his duties being as above described and to use the vat for the purposes for which it was designed. He was taken to the vat and an employe told to explain his duties to him, how to use the lifting apparatus, the steam jet, how to keep the liquid up to its necessary strength, and where to get the materials for the purpose. Plaintiff worked at his task for eighteen months, when he quit on account of ill health. He knew nothing of the ingredients of caustic soda or potash, its effects on grease, paint, or metals when subjected to heat and vapor, nor did he know that the chemicals alone or their products when thus combined would prove deleterious to his health.

When he first began he used his bare hands in putting the caustic soda into the tub, but he at once discovered that it burned his hands, and thereafter he found means to cover them when handling it. He also learned that the liquid made his hands sore and consumed his finger nails, and thereafter he kept his hands oiled as a protection against that effect. In using the steam jet he discovered that the particles when they struck his fact would cause a stinging sensation, but he did not know that he was incurring any danger beyond these surface burns, or that his health was in danger either from the inhalation of the vapors or by absorption of the poison from contact therewith. The evidence of plaintiff's witnessses standing alone would have sustained a verdict that the condition of his health was due to both absorption of metallic and chemical poisons by contact, and to inhalation of the vapors and gases arising from the heated liquid. The testimony of defendant's witness tended to show that plaintiff was suffering with tuberculosis and that his ill health was in no way due to metallic poison. That the vapors from the vat contained no poison, and that contact with the liquid or the chemicals would result only in surface sores.

The physicians testifying in behalf of plaintiff stated that they could not say with certainty that any of the metallic poisons generated by the liquid except potash and lead had produced any deleterious effect upon plaintiff. That these two played the important part as evidenced by his symptoms. They agreed that the conditions had subjected him to the

influence of the other poisons also. Plaintiff's pleadings did not specify the character of metallic poison to which his injuries were alleged to be due.

Jason A. Baker, the man who employed plaintiff and put him to work, stated that they had great difficulty in getting a man for the place. That he had put from fifteen to thirty men to work at the tub prior to plaintiff's employment, and they would quit in a short time. Some of them became sick and at least one had to seek medical treatment. That he did not tell plaintiff of this because he needed a man for the place, and on that account did not warn him of the dangers of the position.

The evidence is sufficient to support the verdict that the plaintiff's injuries were due to absorption of metallic and chemical poisons, principally lead and caustic soda, and that this was brought about by actual contact with the poisons.

The evidence was sufficient to authorize the trial court to submit as an issue whether the vapors contained poison which affected plaintiff by inhalation, but whether we could approve the verdict upon this ground alone is another question. In the present attitude of the case the jury are presumed to have based their verdict upon the issue which the evidence fully sustains.

This in effect disposes of the assignments assailing the judgment on the ground that the court should have directed a verdict for defendant, and also the one complaining because the court refused to withdraw from the consideration of the jury the issue as to whether the poison could have been the result of inhaling the vapors.

It is plain that the plaintiff is not shown to have assumed the risk, for the reason that the dangers were latent and not open to the observation of one not learned in chemistry. Plaintiff was an ordinary laborer, did not apply for that particular task, claimed no special knowledge, and the testimony of Baker shows that he knew that plaintiff was not aware of the risks he was assuming, nor can we say as a matter of law that plaintiff should have learned by experience that the danger of poisoning was present. It by no means follows that surface burns and stinging sensations produced by particles of the liquid would put a man of ordinary information on notice that he was in danger of poison by absorption. That he was put to work there without warning of unusual danger was a tacit assurance by the master that no unusual danger was to be apprehended. The issues of latent danger and knowledge thereof on the part of plaintiff acquired before his injuries were properly submitted in the main charge.

What seems to be regarded as the most serious question presented on this appeal is contained in the sixth assignment, complaining of the refusal of the trial court to restrict the jury to the consideration of lead poison and caustic soda as the cause of plaintiff's injuries. As before stated, plaintiff did not allege that his injuries were due to any particular poison contained in the liquid, but averred generally that the liquid contained the several chemical and metallic poisons testified about.

It was shown that the liquid contained several kinds of metals deleterious to health and that plaintiff had been exposed alike to the action of all.

The plaintiff's physicians agree that 'he is suffering from metallic and chemical poisons due to his work about the vat, but can be certain of only two, viz., lead and potash. We do not think this authorized the trial court to take from the jury the consideration of the other harmful substances to which plaintiff had been exposed by the negligence of defendants. If this were true, then if the physicians had all agreed that he was suffering from metallic and chemical poison due to his work about the vat, but had confessed their inability to say definitely which of the poisons had produced the bad results, then it would have been the duty of the trial court to instruct a verdict for defendant, notwithstanding plaintiff was shown generally to have been injured by the negligence of defendant as alleged,—a proposition manifestly unsound.

The evidence on the question of liability is sufficient to support the verdict. The amount of the verdict is not complained of.

For the reasons given the judgment is affirmed.

*Affirmed.*

Writ of error refused.