## CHAS. S. FISHER v. A. J. DIPPEL.

### Decided May 3, 1907.

**1.—Vendor and Vendee—Contract—False Representations.**

Where the representations of a vendor as to the value of the subject matter of the contract are made as a statement of fact, and not as a mere expression of opinion, and with the knowledge that the purchaser had not seen the property and would not investigate the truth of the representations. such representations are material, and their falsity sufficient cause for annulling the contract of purchase.

**2.—Same—Defense—Pleading.**

In a suit to enforce a contract to purchase land, the defendant alleged, in substance, that he was unlearned in the law; that he was not aware that by accepting the vendor's offer and closing the deal by telegram that a contract, binding under ordinary circumstances, had been made by him; and that it was always his intention to examine the property before finally concluding the trade, in order to verify the representations of the vendor. Held, not inconsistent with other allegations to the effect that he relied on the representations of the vendor as to material facts.

Appeal from the District Court of Fayette County. Tried below before Hon. L. W. Moore.

*John B. Durrett,* for appellant.—The allegations contained in defendant's answer show affirmatively that he did not rely upon the representations of the plaintiff concerning the property he was trading for, but that it was his intention at all times to see and examine the property before the trade was finally concluded by the execution of deed, in order to verify the representation of plaintiff. Cresap v. Manor, 63 Texas, 485; Wooters v. I. & G. N. Ry. Co., 54 Texas, 294; McCall v. Sullivan, 1 Texas App. Civ. Cas., sec. 1; Garrett v. Burleson, 25 Texas Sup., 44; Simpkins Eq. pp. 309-313 and Texas authorities there cited; 20 Cyc. p. 39-40 and authorities cited; 2 Pomeroys Eq. Jur., p. 1586, secs. 890-891-892.

If a party undertakes to discover the truth, then he is bound by everything a proper investigation would disclose. 69 Texas, 513; 46 Texas, 219; 21 Texas, 743; 31 Texas, 445; 25 Texas Supp., 44; 54 S. W. Rep., 914; 42 S. W. Rep., 789; 13 Wall. 379; 116 U. S., 599; Simpkins Eq. p. 312.

*Geo. E. Lenert* and *J. T. Duncan,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—This suit was brought by appellant against appellee to compel the performance of a contract for the conveyance of land. The defendant's answer admits the execution of the contract, but avers that its execution was induced by false and fraudulent representations on the part of plaintiff, and it was therefore not binding on defendant, and he prays that said contract be cancelled and held for naught. The trial in the court below without a jury resulted in a judgment in favor of defendant granting the relief prayed for by him.

The material facts found by the trial court, which we find to be supported by the evidence and adopt as our conclusions of fact, are as follows:

1. That plaintiff, Chas. S. Fisher, resided in Bell county, Texas, and the defendant, A. J. Dippel, in Fayette county, Texas.

2. On the 9th day of February, A. D. 1905, the defendant, A. J. Dippel, was the owner of 1,280 acres of land situated in Roberts county, Texas; said land is described in paragraph No. 2 of the plaintiff's original petition, and the equity therein owned by defendant was worth the sum of $2,750.

3. The plaintiff, Chas. S. Fisher, owned a tract of land in Milam county, Texas, consisting of 104 acres, the value of which was about $600, which was encumbered at the time, with a vendor's lien of $500.

4. The defendant listed his land, either for sale or exchange, with W. C. Belcher, a land agent located at Austin, Texas, and said Belcher advertised defendant's land for sale or exchange.

5. That at the time defendant listed his land with said Belcher he owed the State of Texas on the purchase ·money, 97½ cents per acre, or $1,248, and its total value was $4,000.

6. On February 9, 1905, plaintiff, Fisher, addressed a letter to W. C. Belcher, offering to trade for defendant's land, which letter reads as follows, to-wit:

"Mr. W. C. Belcher,
        Austin, Texas.
    Dear Sir:—I will give you a trade for your client's equity in the ranch of 1,280 acres situated in the Panhandle country, near the town of Miami. I have a very nice little farm of 104 acres, situated in the county of Milam, 55 acres in cultivation, 25 acres or more of very fine sandy loam prairie that can be put in cultivation with very little expense, the balance of the land has fine timber. The improvements consist of one two-room house, one smoke house, chicken house and good barn, and pig pens, etc. There are fenced off separately for hog pasture 10 acres. This place rents readily, and it is very productive. It is well adapted to the raising of corn, cotton, sugar cane, peanuts, potatoes, and all kinds of fruits. I have never offered this place at less than $2,500. I am now holding it at $2,750. I think I would be willing to trade this place to your client for his equity in the 1,280 acres, presuming that not less than half of the land is good agricultural land.
                            Yours very truly,
                                Chas. S. Fisher."

On February 13, 1905, plaintiff again wrote Belcher in regard to the land. This letter contains the following statements: "The general character of the soil is sandy loam with clay foundation. That part of the land which is not in cultivation and not in the open prairie has heavy oak timber on it. . . . There is a good bored well on the place that furnishes plenty of water for all purposes."

On February 14, 1905, Belcher wrote to defendant the following letter:

"Mr. A. J. Dippel,
        Ellinger, Texas.

Dear Sir:—Since writing to you yesterday, Mr. Fisher has sold a farm of 96 acres which is just across the public road from the 104 acres that he offers you. It is the same kind of farm, and the improvements are about the same as on the place he offers you. He sold the 96 acre farm for $2,500. I know this, because the deal was made direct through my office. This affords some idea of what others think and act upon as to the value of that part of Milam county.

Yours truly,
W. C. Belcher."

7. The court finds that the plaintiff, by the letter above written, and by the communication made to W. C. Belcher, and by W. C. Belcher to the defendant, intended to create the impression that his land, situated in Milam County, was worth the sum of $2,750, and that this was not an opinion, but he intended it to be received by defendant as a fact. The court finds that the representation by plaintiff as to the value of his Milam county property was false, and that it was not worth on the market exceeding $600, and that it had been sold for that amount about sixteen months before. The court finds that there are not 55 acres in cultivation on said farm; that the soil was not a high grade sandy loam, but was a poor and inferior grade of post oak land; that there was no fine timber on it, that the same was very inferior, scrubby-post oak of trifling value; that the improvements were old, and of but little value, if anything; that the representation that it had a "good barn" was false, and misleading. That what was described as a "good barn" was a very small crib, capable of holding a few bushels of corn only, and of trifling value. That there was no hog pasture fenced off, as represented, and that it was not productive as represented, and that it was not adapted to the raising of corn, cotton, potatoes or fruit. When the plaintiff, in his letter stated, "I have never offered this place for less than $2,500. I am now holding it at $2,750" he intended to convey the impression, and wanted defendant to believe, that said land was at that time worth $2,750. The court finds that these representations were material, and were relied upon by the defendant, and were believed by him to be true, and they induced the defendant to accept the proposition of exchange offered by the plaintiff. The court further finds that the representations made in the letter dated February 13, 1905, that said land had heavy oak timber on it, was untrue, and the representation that there was a bored well on the place that furnished plenty of water for all purposes, was untrue. That the land was perfectly adapted to the raising of cantaloupes and Irish potatoes was untrue. The court finds that there was a bored well on said premises, but that it did not furnish water fit to drink, and that the occupants on

said land had to get water from some other place. That the said 104 acres of land had not increased, but decreased in value since November 3, 1903.

8. The court finds as a fact that the representations made to defendant that the Fox property, which was an adjacent place, was worth $2,500, and had been sold by plaintiff right recently for $2,500, was untrue, and if such a deal had been made by plaintiff as represented to defendant, that the same was simulated, pretended, not real, but was a scheme concocted and devised by plaintiff to mislead, over-reach and deceive and to take unfair advantage of defendant.

9. That all of the representations set out in paragraphs Nos. 7 and 8 as to the value of land, its character, quality and improvements, were false, were material, and were relied upon by the defendant. The court finds that there was a contract of sale, as alleged by plaintiff, sufficient to pass the title, except for the facts found herein.

10. The court further finds that the defendant is a person unlearned in the law; that he did not know, when this negotiation was going on, that he had consummated a sale of his property, but believed that he had time to make an investigation of plaintiff's land before the deal was closed and deeds passed, but in so far as he was induced to make the sale, or the contract of exchange, which is sought to be enforced, he was induced to assent to it by the representations made to him by the plaintiff, and especially as to the representations of the value of plaintiff's land.

The first assignment complains of the ruling of the trial court in not sustaining plaintiff's exceptions to defendant's answer on the ground that said answer affirmatively shows that the alleged false representations of plaintiff were not material, and were not relied upon by the defendant.

The proposition that false representation which is not material or relied upon by the party intended to be influenced thereby can not be availed of by such party as a ground for avoiding his contract, is sustained by all the authorities, but the answer of defendant does not show that the alleged false representations of plaintiff were not material or that they were not relied on by the defendant, and therefore the trial court did not err in overruling the exception.

The representations alleged were as to the essential character and value of the subject matter of the contract, the representations as to value not being the mere expression of an opinion, but made as a statement of fact and with knowledge that defendant had not seen the property and would not investigate the truth of said representations before acting upon plaintiff's offer. We do not think the materiality of such representations can be questioned.

It is repeatedly averred in the answer that defendant relied upon the representations made by plaintiff, and the allegation that "He was not aware that by accepting Fisher's offer and closing the deal by telegram that a binding contract, enforcible in law under ordinary circumstances, had been entered into by him. That it was his

intention at all times to see and examine the property before the trade was finally concluded by the execution of deeds, in order to verify the representations of plaintiff" does not indicate that he did not rely upon such representations. It means no more than that he was ignorant of the legal effect of his acceptance of plaintiff's offer, and if he had known that his acceptance by telegram of said offer constituted a binding contract for the conveyance of his land he would not have closed the contract before seeing the land, and this is not inconsistent with the allegations that in accepting plaintiff's offer he relied upon the truth of plaintiff's representations as to the character and value of the land and improvements.

The second assignment of error is as follows: "The court erred in rendering judgment denying plaintiff the right to enforce the performance of the contract sued on and in sustaining the cross action of the defendant for a cancellation of said contract." This assignment is too general to require our consideration.

The judgment of the court below should be affirmed and it has been so ordered.

*Affirmed.*

Writ of error refused