PARKER et al. v. NAYLOR et al.

(Court of Civil Appeals of Texas. Amarillo. Nov. 23, 1912. Rehearing Denied Dec. 21, 1912.)

1. PLEADING (§ 205*)—GENERAL DEMURRER—EXCEPTION.

Where an exception in an action for breach of a contract for the sale of land stated that plaintiffs specifically excepted to the allegations of the defendants' answer, which attempted to set up fraud in obtaining a contract differing from a prior understanding between the parties because the facts constituting the alleged fraud were wholly insufficient, indefinite, and uncertain, and failed to show any material difference between the written contract and the prior understanding, and in effect attempted to vary a written contract by parol, it

was merely a general demurrer to each of the allegations attacked.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 491–510; Dec. Dig. § 205.*]

2. PLEADING (§ 8*)—CONCLUSIONS—FRAUD AND DAMAGES.

Where the answer in a purchaser's action for breach of a land sale contract alleged that defendant had been induced to sign the contract by plaintiffs' fraudulent representations that it bound him to purchase, "assuming" a certain debt, when in fact it merely bound him to purchase "subject to" such debt, it was not demurrable for failure to allege some special damage resulting from the fraud; it not being necessary for a vendor, after setting up the fraudulent representations, to also specifically allege how he was damaged, since such allegation would be merely a statement of a legal conclusion or of a fact necessarily deducible from the facts stated.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 12–28½; Dec. Dig. § 8.*]

3. VENDOR AND PURCHASER (§ 38*)—CONTRACT OF SALE—VALIDITY—FRAUD.

Where a vendor is induced by fraudulent representations of the purchaser to sign a contract for the sale of land under the belief that it binds the purchaser to assume a certain debt when in fact it binds him merely to take subject to such debt, the contract is unenforceable though the vendor reads same before signing it, if he does not understand its legal effect.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 61–65; Dec. Dig. § 38.*]

4. EVIDENCE (§ 420*)—PAROL EVIDENCE—DELIVERY ON CONDITION.

In a purchaser's action for breach of a land sale contract, evidence that the vendor executed the contract upon condition that it should not become effective until approved by his co-owner was admissible; it being always permissible to show that a written contract was delivered effective upon condition.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1728, 1795, 1800, 1804, 1815, 1821, 1929–1944; Dec. Dig. § 420.*]

5. VENDOR AND PURCHASER (§ 16*)—SALE OR CONTRACT—PAROL STIPULATIONS—PARTNERS —AGENT.

A parol stipulation, at the time a partner or agent signs a contract for the sale of land belonging to the partnership or to his principal, that the written contract shall not become effective until the consent of his co-partner or principal shall have been obtained is binding upon the purchaser.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 17, 20; Dec. Dig. § 16.*]

6. TENANCY IN COMMON (§ 43*)—SALE—RATIFICATION BY CO-OWNER.

In order for a person to ratify a land sale contract executed by his co-owner, he must answer or agree to same with knowledge of its material terms.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 130–132, 136, 137; Dec. Dig. § 43.*]

7. APPEAL AND ERROR (§ 930*)—VERDICT— EVIDENCE.

Where a general verdict is rendered for defendant in a case involving several defenses, and one defense is sustained by the evidence, it is immaterial that the other defenses are not sustained; the presumption being that the evidence was based on the defense sustained.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3755–3761; Dec. Dig. § 930.*]

8. TRIAL (§ 296*)—INSTRUCTIONS—CURE.

Under Court of Civil Appeals Rules, 62a, providing that a judgment shall not be reversed for error not reasonably calculated to produce an improper judgment, it was not reversible error in a purchaser's action for breach of a land sale contract against two co-owners of land, only one of whom signed the contract, to instruct that, to constitute a partnership, the co-owners must have entered into a partnership contract to buy and sell the land and have agreed to share equally in the profits, and that they should have a community of interest therein, where the court in another instruction stated that a mere joint ownership or a community of interest in land does not constitute a partnership even though the increase from it is divided, and that, where a joint purchase of property is made as an investment merely, each paying his proportion of the purchase money, there is no partnership; it appearing that the jury could not have been misled from a consideration of both instructions.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. § 296.*]

Appeal from District Court, Hardeman County; S. P. Huff, Judge.

Action by C. A. F. Parker and another against S. A. Naylor and another. From a judgment for defendants, plaintiffs appeal. Affirmed.

Madden, Trulove & Kimbrough, of Amarillo, for appellants. Veale & Davidson, of Amarillo, for appellees.

HALL, J. This is the second appeal in this case. At the former trial the suit was for specific performance of a contract to convey lands, and in the alternative for damages for breach of the contract, and appellants recovered upon their alternative prayer for damages. Naylor v. Parker, 139 S. W. 93. Upon reversal, appellants, plaintiffs below, filed their second amended petition in which they abandoned that part of their cause of action seeking specific performance, and sued only for damages for breach of contract. The contract is copied in full in the former opinion, and, in so far as it is important to the questions to be considered upon this appeal, its provisions and recitals are that the appellees, S. A. Naylor and Arthur Lile, in consideration of $1 paid, granted unto the appellants an option to buy four leagues of land known as the Sherman county school lands, situated in Cochran county, for a period of 15 days from the date of the contract, which was February 17, 1909; that, if appellants should determine to buy the land under the agreement, they should within 15 days deposit in the Western National Bank at Hereford, Tex., $1,500 in escrow, pending the fulfillment of the agreement; that the purchase price should be $5 per acre for the entire tract, plus an additional sum of $500. It is further recited in the contract that the appellees owed Sherman county an average of $2 per acre, plus $500 for said land, and that the amount due Sherman county should be

deducted and the land "deeded to said Parker, subject to said indebtedness"; that, upon the acceptance by Parker's attorneys of the title and conveyance to him by the sellers, he should pay an additional sum of $13,500, making a total cash payment of $15,000; and that the remainder should be divided into three equal payments, due on or before one, two, and three years from date, respectively, with interest at the rate of 8 per cent. per annum. After setting up the stipulations of the contract in full, the petition alleged that, before the expiration of the 15 days provided in said contract, appellant Parker exercised his option to buy the lands by making the $1,500 deposit in the bank specified, and gave appellees notice of such deposit and requested appellees to send forward for examination the abstracts of title as provided in the contract; that appellee Naylor forthwith advised appellee Lile that appellant Parker had exercised his option and demanded the carrying out of the contract; that appellees and each of them had refused to furnish the abstracts of title for examination, had declined to consummate the contract to sell the lands, and prior to the filing of said petition had expressly repudiated the same and arbitrarily, willfully, and fraudulently declined to comply with its terms. It is further alleged that appellants since the execution of said contract, had an opportunity of selling a half interest in the land to one J. N. Bolard at an advance of $2.50 per acre, and that, at the time the contract sued upon was executed, the appellees were duly advised and notified that appellant, when contracting for an option on the land, was doing so for the purpose of reselling the same at a profit; that, at the time appellees breached the contract, the lands were of the reasonable market value of $8 per acre, and that by said breach appellants were damaged generally, in addition to the special damages alleged, in the sum of $60,000. It is further alleged that the contract was executed by S. A. Naylor, acting for himself and as the co-owner with Lile; that, before or at the time of the consummation of their purchase of said lands from said county, appellees formed a partnership for the purchase, handling, and sale of said lands, by which they were to pay equally the purchase price and to share equally the expense, burden of holding, handling, and selling the same, and were to share equally the income, revenues, and profits derived from said lands and the sale thereof; that each of them, as such partner, was authorized to make a valid contract for the sale of the lands; and that the contract in question was signed by appellee Naylor individually, and also with the partnership name of Naylor & Lile, and that, in so signing said contract, he was authorized to bind both himself and the said Lile. It is further alleged that, if the ap-

pellants should be mistaken in alleging that appellees were partners, they nevertheless had an understanding and agreement by which either of them was authorized to represent the other to sell the lands; that appellee Naylor was the owner of an undivided one-half interest in the lands, and by virtue of the facts already set out was bound to convey to appellants the said undivided half interest therein; that he undertook and bound himself to cause said Lile, who was the owner of the other half interest, to convey the same to appellant Parker according to said contract, and breached his obligation in that particular to the further damage of appellants in the sum of $30,000. It was further alleged that, at the time appellee Naylor made said contract, he represented and warranted to appellant Parker that he was authorized to make the contract for the sale of said lands on behalf of himself and as co-owner, knowing full well the extent and limit of his authority, and that, if he was not authorized to represent said Lile, he knowingly, fraudulently, and willfully misrepresented his authority and induced appellant Parker to rely thereon; that appellant Parker was in fact misled and did rely upon appellee Naylor's representation, and that Naylor willfully, wrongfully, and knowingly exceeded his authority in making said contract, if he was not authorized to represent his co-owner, to the damage of appellant in the sum of $30,000; that appellee Lile, having been informed by his co-owner immediately after the making of the contract that appellant Parker had exercised his option to purchase said lands, took no steps to repudiate the same or to deny the authority of Naylor to make the contract on behalf of them both, but on the contrary said Lile, after receiving full notice and with knowledge of all the facts, proceeded to ratify and confirm the contract, permitted Parker to act upon the same and deposit said $1,500 in part performance thereof, and addressed a letter to the bank with which said deposit had been placed, stating that he was informed that the option contract had been executed by appellee Naylor, demanding that appellant Parker close up said purchase by executing additional contracts which he inclosed with said letter, and by these acts and others ratified and confirmed the said contract and estopped himself to deny the authority of appellee Naylor to execute the contract for him.

Appellee Naylor excepted generally, pleaded the general issue and specially in substance as follows: That in January, 1909, prior to the signing and delivery by him of the contract sued on, he was the owner of an undivided half interest in the lands in question; that appellee Lile was the owner of the other half interest, and that in the month of January, 1909, appellee Naylor was approached by appellant Parker, who in-

quired of him the price and terms upon which appellees were willing to sell their interest in said lands; that appellee Naylor, without knowledge and consent of Lile, or without any authority from Lile, proposed to accept the sum of $3 per acre over and above the amount then due and owing by himself and Lile to Sherman county, or a gross sum to appellees of $52,145; that the terms of said offer were substantially that appellant Parker was to pay the said sum of $15,000 in cash and execute and deliver to appellees his certain promissory notes in the amounts and payable at the times agreed upon, and in addition thereto was to become liable and bound to assume the payment to said Sherman county the amount of money then due and owing said county; that at said time said Parker did not say whether he would or would not purchase said land, and no final agreement was reached between said appellant and appellee Naylor; that at said time he told said Parker that he (Naylor) only owned an undivided half interest in the land; that Parker well knew that the offer on the part of appellee to sell the land was conditioned upon the agreement of said Lile, and that any sale that might be made was conditioned upon and subject to said Lile's approval, and it was then and there understood and agreed between Naylor and Parker that, before any offer on his part to sell should become binding upon him or upon Lile, it would have to meet the approval of Lile; that thereafter on the 17th day of February, 1909, Parker again approached Naylor with reference to the purchase of lands and requested an option for 15 days, and, if at the expiration of said 15 days he desired to purchase, he (Parker) would do so, upon the conditions, at the price, and upon the terms theretofore agreed to between himself and the said Naylor; that Parker took from his pocket some papers which he informed Naylor were contracts, written in duplicate, to be executed by himself, Parker, and the appellees, and then and there assured appellee Naylor that said written contracts embodied and contained all the terms, conditions, stipulations, and agreements theretofore forming the tentative agreement made between himself, Parker, and appellee Naylor at said January conference and none other; that, at the time the contracts were exhibited to him, the train on which Parker desired to leave Chilicothe (Naylor's home where the contract was made) was almost due to leave; that Parker expressed a desire not to miss the train, and together with this appellee read and compared said duplicate contracts in a hurried manner; that appellee Naylor's experience in drafting, phrasing, and wording written contracts is limited, he not having occasion to study the meaning of technical phrases, not being a lawyer skilled in such matters, but for the greater part of his life having been a farmer, almost wholly ignorant of the meaning, as well as of the binding force and effect, of legal and technical phraseology; that he had known appellant Parker for a number of years and had implicit confidence in his honesty and integrity, and was willing to believe, and did believe, all the statements and representations then and there made to him about the contents, wording, and meaning of the contract, and that said contract was made and delivered upon the same conditions as the tentative agreement theretofore had between them; that Parker was a president of a bank, highly educated, shrewd business man, and assured Naylor that the written contract was made upon the same conditions and had embodied in it all of the material provisions and stipulations in accordance with their verbal agreement, and specially assured appellee Naylor, who was induced to believe his representations, that, by the terms of the written contract, appellant was to assume the debt due him by himself and his codefendant Lile to Sherman county as part of the purchase money for the land. It is further alleged that the contract as actually signed does not assume the payment of the sum due said county or any part thereof; that the limited time in which he had to examine said contract was not sufficient in which to secure the services of a lawyer to advise him in the matter; that he relied almost wholly on the statements of appellant Parker as to the contents thereof, which statements were untrue in fact and induced him to sign the contract; that said representations were that said contract was drawn in accordance with the tentative agreement theretofore had with appellant Parker and this appellee, and had the effect to mislead and induce appellee to sign the contract, said appellant well knowing at that time that appellee would not execute and deliver the contract if he knew that appellant was not bound to assume the payment of said debt to Sherman county; that he (Naylor) was wrongfully deceived and misled by appellant in said representations into believing that appellant had obligated himself to assume the payment of said indebtedness to Sherman county; that, acting thereon, he signed said alleged contract; that he would not have signed the same had he not been misled. Appellee Naylor further pleaded that he never represented or warranted to appellants or either of them that he was authorized to sell or make contract to sell the interest of said Lile in said land; that he explained to said Parker at said January conference, and also when the contract was signed, that he owned an undivided one-half interest in the land, and that it was understood between appellee and the said Parker that the said contract would not be binding upon Lile unless he (Lile) should approve the same; that said Parker

well knew at all times that appellee Naylor had no authority, was not presuming, and had not agreed to convey Lile's interest in said lands unless the said Lile should consent thereto; that nevertheless, when Parker produced said contract for this appellee's signature, he asked appellee to sign the same "Naylor & Lile"; that this appellee then and there told Parker that he did not understand that he had a right to sign Lile's name to said contract, and then and there told Parker and gave him to understand that he did not want to sign Lile's name thereto, and that he did not know what about so signing "Naylor & Lile" to said contract, but Parker urged him to sign and told him that it would be all right to so sign it; that but for said representation on the part of Parker, and the fact that Parker urged him to sign said contract and told him that it would be all right to do so, he would never have signed Lile's name to said contract; that he had confidence in Parker's honesty and integrity, and was persuaded by him to so sign said contract; that Parker well knew that he (Naylor) was not claiming any authority to execute said contract on behalf of Lile, and did not intend to convey said land except and unless the same should be approved by Lile; that from the very first conference in January, 1909, whether or not a sale of said lands should be finally consummated was dependent upon Lile's approval thereof, and, when the alleged contract sued upon was signed, it was with the understanding that Parker would take the land subject to the agreement on the part of Lile to the contract; that at said January meeting, Parker stated that he wanted to buy all the land or none; that it was understood and agreed at the time of signing the contract that Parker was not buying this appellee's undivided interest, but was buying all the land subject to the approval of said Lile as to the sale of his portion, and that there was never at any time any offer on the part of Parker or any agreement between Naylor and Parker for the sale of Naylor's undivided interest in said land alone; that said Parker asserted that he was offering to buy and would buy all the land or none; that, after said contract was signed, said Parker again at Hereford, about the 22d day of March, 1909, asserted to appellee that he had bought all the land from him; that he did not want only his undivided interest, but had bought it all and would hold this appellee to a conveyance of all the land or none; that it was never in contemplation of the parties that Naylor's interest in said land should be conveyed to said appellant unless said Lile should also agree to convey his interest. The answer further denies the agency of Naylor and the allegation of partnership.

Appellee Lile adopted the answer of his codefendant and alleged specially that the contract was not executed by him or by any person authorized to execute it for him; that it is not his act or deed; and that he is in no sense bound thereby. The case was tried by a jury and resulted in a verdict and judgment for the appellees. The briefs contain numerous assignments which will not be necessary to consider in detail in the disposition we make of the case.

[1] The first assignment of error is: "The court erred in overruling plaintiff's general demurrer as contained in their first supplemental petition in reply to the first amended answers of the defendants." Five propositions are urged following this assignment, and they are substantially as follows: First proposition: That the allegations in the answers of the appellees, attempting to set up deceit, misrepresentation, and fraud, were insufficient to constitute a defense because it was not alleged that there was any material difference to appellees between the pretended representation which it is claimed the appellant Parker indirectly made to the effect that the contract as drawn, embodied a provision that he should assume the indebtedness of appellees to Sherman county on the lands in question, and the stipulation contained in the contract to the effect that the amount of said endebtedness should be deducted from the total purchase price, and that Parker should buy the land subject to the indebtedness. Second proposition: The allegations in the special answers of the appellees to the effect that it was stated at the January meeting, and understood and agreed at the time the contract was signed in February, 1909, that the contract was not to be binding unless and until it was approved or ratified by appellee Lile is obnoxious to the rule that the terms of a written contract cannot be varied by antecedent or contemporaneous parole agreements. Third proposition: The allegation to the effect that Naylor signed the contract with the mistaken belief that it contained stipulations which it did not contain is no ground for relief against the binding obligation of the contract in the absence of allegation that the other contracting party was also acting under a mistake or that he was guilty of fraud. Fourth proposition: A mistake of law does not avoid a contract in the absence of any confidential relation. Fifth proposition: The allegations of misrepresentations, deceit, and fraud are wholly insufficient, because they fail to show that the appellee Naylor did not have at hand the means of readily and fully informing himself as to the actual terms of the contract which he signed and show that he had such means. It will be seen that some of the propositions are not germane to the assignment. Appellants filed first a general demurrer to the first amended original answer of the defendants, and the following, which they term a special exception: "They specially except to the allega-

tions contained in said answers, attempting to set up fraud, in obtaining the contract sued upon, because the alleged facts constituting the alleged fraud are wholly insufficient, indefinite, and uncertain, and fail to show any material difference between the written contract and the alleged prior understanding in regard thereto, and said allegations and the allegations pretending to set up pretended conditions upon which the contract should become effective are in effect an attempt to vary by parole stipulations the terms of a written contract. Wherefore plaintiffs specially except to all of said allegations as insufficient in law, and pray the judgment of the court." It will be seen that this exception merely attacks the legal sufficiency of a portion of the petition, and is in effect nothing more than a general demurrer to each of the issues attacked thereby. Donnell v. Currie & Dohoney, 131 S. W. 88; Cheek v. Herndon, 82 Tex. 146, 17 S. W. 763; Railway Company v. McElmurry, 33 S. W. 249. It thus appears that we are to consider the sufficiency of that portion of the answer alleging fraud as against only a general demurrer.

[2, 3] It is insisted by appellant that because the answer did not allege some specific damage resulting to appellee by reason of the fraud of Parker in inducing Naylor to sign the contract, wherein Parker bound himself to purchase the land in question "subject to" the Sherman county debt instead of in said contract "assuming" said debt, as had been previously agreed between them at the January meeting, the answer was insufficient as against the general demurrer. We cannot assent to this contention. We think it was sufficient as against a special demurrer upon that ground. That there is a difference of both substantive rights and liabilities from the appellees' standpoint, under the contract as drawn and under the contract as it is alleged it should have been drawn, is obvious. If Parker had agreed to assume the indebtedness due Sherman county, he would have become primarily liable for the debt, and, in the event the land should not sell for enough to pay the notes executed by appellees, they would have been protected against liability for the balance by Parker's assumption. We think this is a clear legal conclusion to be drawn from the facts stated in the answer, and it is never necessary, or even proper, to allege conclusions of law. Storer v. Lane, 1 Tex. Civ. App. 250, 20 S. W. 852; Mussina v. Goldthwaite, 34 Tex. 132, 7 Am. Rep. 281; Milburn v. Walker, 11 Tex. 329. We must not lose sight of the fact that this is not a suit by appellees for the recovery of damages resulting from fraud and deceit. But the suit is by appellants seeking to recover damages for the breach of a contract, and the fraud in this case is pleaded as a defense only. Appellees are not seeking damages; then why should they be re-

quired in a defensive plea to specifically point out damages? By their answer appellees assert that the contract sued upon is not the one intended, and, while appellee Naylor admits signing the instrument, yet he says it does not speak the agreement with reference to the assumption of the debt, and that his signature thereto was obtained by the fraudulent statement of appellant Parker that the writing as submitted to him did bind Parker to assume the Sherman county debt, when in truth and in fact the instrument binds appellees to convey the land to Parker, subject to the Sherman county debt. If this is true, the contract is fraudulent and voidable and should not be enforced. The real inquiry is, What was the true agreement of the parties upon which their minds met? And does the written instrument speak the agreement? If it does not, was there such fraudulent representation or conduct on the part of Parker as to deceive Naylor, and was he deceived thereby? And, further, was the matter about which he was deceived material? The matter complained of was certainly material, because the value of his contract as originally agreed upon was materially lessened. There can be no question but that fraud in material matters of inducement will vitiate the contract as a whole, and that it may be used as a weapon of defense, even though the matter alleged to be fraudulent does not appear in the contract itself. Hollifield v. Landrum, 31 Tex. Civ. App. 187, 71 S. W. 979; Davis v. Driscoll, 22 Tex. Civ. App. 14, 54 S. W. 43; Ranger v. Hearne, 41 Tex. 258; Halsell v. Musgraves, 5 Tex. Civ. App. 476, 24 S. W. 359; Piano Co. v. Nolan, 38 Tex. Civ. App. 395, 85 S. W. 821.

In I. & G. N. Ry. Co. v. Shuford, 36 Tex. Civ. App. 251, 81 S. W. 1189, where appellee was induced to sign a release of damages by fraudulent representations of a physician, the court used this language: "But, however, the twenty-eighth assignment of error raises the question that, as the appellee had an opportunity to read and understand the release, she was bound by it when she signed it, and that, as she freely and voluntarily executed it, it is conclusive of her rights. If we conceded that she did voluntarily sign it, and that at the time she did not read it but fully understood its nature and legal effect, and that it is ever so binding and conclusive in its terms against her, still if its execution was procured by reason of false and fraudulent representations of material nature that induced her to execute it, she at the time believing in the truth of such statements, and, acting upon such belief, signed the release, equity would cancel it." It is shown that, while Naylor read the contract before signing it, he did not understand the legal effect of the language used, and under the circumstances the jury was warranted in believing him upon that point. As was said by Pleasants, Justice, in Fish-

151 SOUTHWESTERN REPORTER

er v. Dippel, 46·Tex. Civ. App. 266, 102 S. W. 450: "The first assignment complains of the ruling of the trial court in not sustaining plaintiff's exceptions to defendant's answer on the ground that said answer affirmatively shows that the alleged false representations of plaintiff were not material and were not relied upon by the defendant. The proposition that a false representation which is not material or relied upon by the party intended to be influenced thereby cannot be availed of by such party as a ground for avoiding his contract is sustained by the authorities; · but the answer of defendant does not show that the alleged false representations of plaintiff were not material or that they were not relied on by the defendant, and therefore the trial court did not err in overruling the exception. The representations alleged were as to the essential character and value of the subject-matter of the contract; the representations as to value not being the mere expression of an opinion, but made as a statement of fact and with knowledge that defendant had not seen the property and would not investigate the truth of said representations before acting upon plaintiff's offer. We think the materiality of such representations cannot be questioned. It is repeatedly averred in the answer that defendant relied upon the representations made by plaintiff, ·and the allegation there, 'He was not aware that by accepting Fisher's offer and closing the deal by telegram that a binding contract, enforceable in law under ordinary circumstances, had been entered into by him; that it was his intention at all times to see and examine the property before the trade was finally concluded by the execution of deeds, in order to verify the representations of plaintiff'—does not indicate that he did not rely upon such representations. It means no more than that he was ignorant of the legal effect of his acceptance of plaintiff's offer, and, if he had known that his acceptance by telegram of said offer constituted a binding contract for the conveyance of his land, he would not have closed the contract before seeing the land, and this is not inconsistent with the allegations that in accepting plaintiff's offer he relied upon the truth of plaintiff's representations as to the character and value of the land and the improvements."

In Hayes v. Bonner, 14 Tex. 629, which was an action by a vendor against his vendee to recover the lands on the ground that the latter refused to pay the purchase money, the defendant alleging that the plaintiff had fraudulently represented to him that he had a good title to the land when in fact he had no title thereto, it was held that the allegation of such fact constituted substantially a good defense to the action, and the pleading was good as against a general demurrer. To the same effect is Morris v. Brown, 38 Tex. Civ. App. 266, 85 S. W. 1015.

The testimony ·is uncontradicted that when Naylor signed the contract in question he thought its provisions bound Parker to assume the Sherman county debt. Justice Stayton in Lott v. Kaiser, 61 Tex. 671, says: "There is no doubt that relief in equity will be granted when the legal effect of a transaction is misapprehended, if such misapprehension be induced or brought about by misleading statements or acts of the other contracting party, for a court of equity will not permit a person to take advantage of another's ignorance or mistake even of law, if such person knew of the misapprehension at the time of the contract and did not correct it. For to make the contract under such circumstances would be fraudulent." Danner et al. v. Ft. Worth Impl. Co., 18 Tex. Civ. App. 621, 45 S. W. 856, was a case where the implement company sought to recover upon two promissory notes and to foreclose the chattel mortgage given to secure them. The defendants, by special answer, set up that the notes were given in consideration of a certain engine guaranteed by the plaintiff to do a certain character of work; that the engine was defective; and that the defects were hidden until after the engine had been placed in position for doing the work. To this answer the plaintiff replied that the defendants had signed a written order for the machine providing that 10 days' use of the machine should be conclusive evidence that it fulfilled the warranty. The defendant sought to avoid this clause on the ground that the order which had been signed by them was procured by the fraudulent representation and assurance of plaintiff's agent that it was only an order for the goods amounting to nothing except to show that the purchasers are acting in good faith and will take the goods if they find them to be as represented. The court sustained a general exception to the defendant's answer, urging fraud of the plaintiff in procuring the order for the machinery. Tarlton, Chief Justice, reversed and remanded the cause, and said: "In this (sustaining the general exception to defendants' answer) we think there was error. The allegations show, as against a general demurrer, active and affirmative fraud on the part of the plaintiff, consisting of false representations, misleading and inducing the execution of the order. If these allegations be true, we think they state a ground for avoiding the clause relied upon." We conclude from the authorities that it was not necessary for appellees, after setting up the representations constituting fraud, to allege specifically how he was damaged, and to have attempted to do so would have been merely the statement of a legal conclusion or at the most the statement of a fact necessarily deducible from the facts stated, neither of which they were required to do.

[4] Nor do we concur in the contention of appellants under the second proposition. The evidence of Naylor, to the effect that he signed and delivered the contract upon con-

dition and with the understanding that it should not become effective and binding upon him until it had been signed and approved by his co-owner, Lile, was not obnoxious to the rule prohibiting parol testimony to vary or contradict the terms of a written contract. It is the settled law of this state that parol evidence is always admissible to show that a written contract was delivered, effective upon conditions. Merchants' National Bank v. McAnnulty, 31 S. W. 1091; Norris v. Cetti, 35 Tex. Civ. App. 28, 79 S. W. 641; Carleton v. Cowert, 45 S. W. 749. Such testimony did not contradict or vary any term of the contract, but on the contrary seemed to accord with it. Upon its face, the contract purported to be the obligation of both Naylor and Lile, and by express terms bound them to convey, not Naylor's interest alone, but the entire four leagues of land owned at that time by Naylor and Lile jointly. It is not contended by appellees that any evidence would be admissible to contradict or vary the terms of the contract in the absence of fraud, but they insist that the writing fails to speak the true intention of the parties in that it does not contain all of the agreement entered into between them. Parol evidence is always admissible in such cases to show the true agreement of the parties, even though it be statements contemporaneous with the execution of the writing, provided it does not vary or contradict the writing itself.

[5] Even if we should hold, as a matter of law, that Naylor and Parker were shown to be partners, still there is evidence sufficient to sustain Naylor's contention that he signed the contract and that Parker accepted it subject to the approval of his partner, Lile; and, if this is a fact, it would be inequitable to give the contract validity against Naylor or Naylor & Lile until the same had been approved by Lile, and this is equally true if we should hold Naylor to be the agent of Lile. While Naylor, as the agent or partner of his co-owner, might have the authority to enter into a contract which would bind Lile, still if he declined to do so, but limited its binding effect by the subsequent approval of Lile, it is clear that such stipulation should not be disregarded by the court. And what has been said disposes of the second, third, fourth, fifth, sixth, seventh, eighth, ninth, thirteenth, fourteenth, twenty-seventh, thirtieth, and thirty-first assignments, raising the questions already decided in different ways.

[6] In our opinion the nineteenth assignment of error, attacking the trial court's charge upon the question of ratification, is without merit. The charge in question instructs the jury: "That before you can find that the defendant Lile ratified the alleged contract of February 17, 1909, you must find (1) that he had full knowledge of all the material terms and provisions of said contract; (2) then you must further find that after he had obtained such knowledge, if you find that he did, he intentionally accepted and agreed to all the material terms and conditions of said alleged contract. This seems to be a clear and correct statement of the law applicable to this phase of the controversy. Appellants' assignments Nos. 24, 25, 26, 27, 28, 29, 32, 33, 34, 35, 36, and 37 present no reversible errors, and are overruled.

[7] The remaining assignments, except the fifteenth and sixteenth, question the sufficiency of the evidence and are overruled, because when a verdict is general we must indulge every presumption in favor of the verdict and judgment based upon it where the case is one involving several issues submitted to the jury for their consideration. Under such circumstances, it will always be presumed by the appellate court that the verdict was based upon the defense which the evidence fully sustains. T. & N. O. Ry. Co. v. Gardner, 29 Tex. Civ. App. 90, 69 S. W. 217; Merriwether v. Dixon, 28 Tex. 18; Baker v. Clepper, 26 Tex. 629, 84 Am. Dec. 591. In our opinion the evidence is sufficient to sustain the defense urged by appellees that the contract in question was signed by Naylor and accepted by Parker upon the express condition that it should not take effect until it had been approved by Lile. For this reason we have not considered in detail the several assignments questioning the sufficiency of the evidence to establish the various issues named in the assignments.

[8] The court instructed the jury that in order to constitute a partnership, as alleged by the plaintiff, it must be shown by the evidence that the defendants, Lile and Naylor, by agreement entered into a partnership contract to buy and sell the land in question, and as a part thereof they agreed to share equally in the profits as such, and that they should have a community of interest therein—that is, proprietorship of property rights in the profits in said business. Appellants complain of this charge because it instructs the jury that, in order to constitute a partnership as alleged by plaintiffs, it must be shown that the defendants by agreement entered into a partnership contract to buy and sell the land in question, and as a part of the agreement to share equally in the profits as such, and that they should have a community of interest in the profits. It seems to be a doctrine in Texas that as to third persons, even if the parties stipulate that they are not to be partners, yet if they engage in an enterprise in which they are to divide the profits as profits, they are partners. In the case of Kelly Island L. & T. Co. v. Masterson, 100 Tex. 38, 93 S. W. 427, the court said: "Masterson was not to receive his share of the profits as compensation for the use of his money, nor were Downey and Kelly to receive their share as payment for services, but each received the

profits as the fruit of the joint enterprise—that is, as profits—which made them partners." In this connection, the appellants further complain of paragraph No. 3 of the general charge, which is as follows: "You are, however, further charged a mere joint ownership or community of interest in land does not constitute a partnership, even though the increase from it is divided. Where a joint purchase of property is made as an investment merely, each paying his proportion of the purchase money, they are joint tenants and not partners, and if from the evidence you find that Naylor and Lile were merely joint owners of the land in question, that they purchased the same as an investment, each paying his proportion of the purchase price, either with the intention of dividing it or making separate sales, or without an agreement to form a copartnership and to participate in the profits thereof as such, then they would be joint tenants and not partners in the land in question and not authorized to bind the other by a contract for the sale of the land, and you should so find, then Naylor had no authority to bind Lile by the contract in evidence for the sale of the land mentioned in this suit unless you find he was acting as agent of Lile therein, or that he was specially authorized thereunto by Lile to make the contract." While the first charge upon the question of partnership as an abstract proposition is incorrect, it seems to us that paragraph No. 3, last above quoted, is not subject to the criticism contained in the brief, and when the two are considered together with the whole charge, if there was error, we think it was not such error as would require a reversal.

Rule 62a for the Courts of Civil Appeals (149 S. W. x), recently promulgated by the Supreme Court and effective November 15, 1912, provides: "No judgments shall be reversed on appeal and no trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such denial of the rights of the appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case," etc. This rule is doubtless one outgrowth of the widespread agitation for reform in court procedure, which has for some time been waged by the press, urged by action of many bar associations and recommended by eminent judges, and upon its face is simple enough. The great difficulty is in making the application of the rule to the particular error. It is with some hesitation that we construe it to be applicable to the contentions arising under the fifteenth and sixteenth assignments, and, by authority of that part of the rule quoted above, we overrule said assignments. We frankly confess that more

than once during the consideration of the case we have been forced to summon the said rule as a posse comitatus to assist us in suppressing the appellants' brawling assignments and their clamorous propositions.

The judgment is affirmed.

**HUFF, C. J., not sitting.**