## JOHN BURLESON V. AARON BURLESON.

Where the surviving husband was sued for the specific performance of a contract to convey community property, made during coverture, and the litigation had been protracted for more than four years, during which time the suit was tried in the District Court, and the judgment revised in the Supreme Court, and eighteen months afterwards, on the eve of trial, after the plaintiff had announced himself ready, the defendant moves that the heirs of his deceased wife be made parties to the suit, by process, involving a continuance of the cause, it was held that the motion was properly overruled.

See this case as to parties, and particularly as to the necessity of making the heirs of a deceased wife parties to suits involving the title to real estate, part of the community property.

Where a suit is brought on a bond to convey land, for specific performance, against the obligor in the bond, it is not necessary to prove the execution of the bond, unless it be denied under oath.

Where the plaintiff sued for the specific performance of an agreement for the exchange of lands, and the Court below decreed title to the plaintiff, the Supreme Court re-formed the judgment so as to decree title also to the defendant in accordance with the contract, although the defendant had not asked such relief, except by his assignment of errors.

Appeal from Williamson. A statement of this case will be found in 11 Tex. R. 2.

*A. J. Hamilton* and *I. A. & G. W. Paschal,* for appellant.

*Oldham & Terrell,* for appellee.

HEMPHILL, CH. J. This cause was before the Supreme Court in 1853, and it was decided that the petition showed a cause of action which entitled the plaintiff to relief. (11 Tex. R. 2.) The cause being remanded and coming on again for trial, the plaintiff announced himself ready, and the defendant making no showing for continuance, the Court ordered the cause to proceed, whereupon the defendant asked leave to amend his

answer by stating that the league of land in controversy was granted to the defendant during the coverture with Rebecca Burleson, his wife, and that the said Rebecca having died before the commencement of suit, leaving children, (who were named in the amendment,) those children had a community interest in the land, with the defendant, and were necessary parties to the suit, and praying that these be made parties. To this the plaintiff objected, and the objection being sustained, the defendant excepted, and on appeal assigned this ruling as a ground of error.

Many authorities have been cited in support of the rule that all persons materially interested in the subject matter of the suit, or as the rule is expressed in some authors, in the object of the suit, should be made parties. The rule is peculiar to Courts of Equity and is founded, as expressed by Judge Story in his Treatise on Equity Pleadings, partly in artificial reasoning, partly in considerations of convenience, partly in the solicitude of Courts of Equity to suppress multifarious litigation, and partly in the dictate of natural justice, that the rights of persons ought not to be affected without giving them an opportunity to defend them. (Story, Eq. Pl. Sec. 76 c.) It is not, in most cases, in any just sense, a right of the parties, but a rule prescribed by Courts of Equity to themselves in the exercise of their jurisdiction, founded upon their own notions of public policy, or public convenience. (Id. Sec. 135 a.) And as it is a rule founded, in some sort, upon public convenience and policy, rather than upon positive principles of municipal or general jurisprudence, Courts of Equity will not suffer it to be so applied as to defeat the purposes of justice, if they can dispose of the merits of the case before them without prejudice to the rights or interests of other persons who are not parties, or if the circumstances of the case render the application of the rule wholly impracticable. (Id. Sec. 77.) The rule, being established for the convenient administration of justice, ought not to be adhered to in cases in which consistenly with practical convenience, it is incapable of application. (Id. Sec. 96.)

Among the numerous exceptions to the rule is the case of a remainderman after tenancy in tail. He has an interest in the object of a suit brought by a tenant in tail affecting the entire fee, and yet he is not required to be made a party. So residuary legatees are interested in the object of a suit by a creditor against the executor to establish his claim or debt against the estate, for the establishment of such debt goes *pro tanto* in strict diminution of their interest in the residue, &c. (Id. Sec. 76 b.) Another rule in relation to parties is, that their non-joinder or misjoinder cannot be made an objection in all stages of the cause, with equal effect. The mere non-joinder of a party, who might be a proper party, but whose absence produces no prejudice to the rights of the parties before the Court, will constitute no fatal objection at the hearing or rehearing, or upon a bill of review. (Id. Sec. 74 a.)

Without further observations on the general rule, and without attempting to analise the principles and reasons of the exceptions to the rule, we will proceed to examine whether there was error in the exclusion of the amendment offered by the defendant, at the time and under the circumstances in which it was offered. No doubt the more correct practice would have been, to have made the heirs of the wife parties at the institution of the suit. The conjugal partnership had been dissolved by the death of the wife, and the husband could not subsequently represent the community in the sense and to the extent that he was its representative and head during the existence of the partnership. Had the husband departed this life, and suit been brought against the wife, as the survivor, to enforce the title, the propriety of joining the heirs of the husband with the wife would have been manifest; and yet a surviving husband has in fact no more power over community property than has a surviving wife, provided that the wife did not renounce, as under our former laws she might have renounced, her rights in the community. It would have been to the advantage of the plaintiffs, had the heirs of the deceased wife been made

parties, as a decree against them would have extinguished all possibility of disturbance in their title. But, although they may have been proper parties, yet they were not so necessary or essential to the adjudication of the matter in controversy, that the objection for the want of them could be taken at any stage of the proceeding, and that the suit must be delayed until they were brought in by service of judicial process, however inconvenient and injurious such delay might have been to the plaintiffs.

Had the wife, through whom these heirs claim, been alive, she could not have been legitimately made a co-defendant, although she had united with her husband in the execution of the contract of sale. Her signature to the bond was not necessary, and imparted to it no additional validity or effect. During her life, it might have been enforced against the husband alone. After her death, her interest in the community descended to her heirs, encumbered with all the charges to which the whole community was subject during her life. As we have seen, the incumbrance would have been enforced against the husband alone during the life of the wife; and, had he, after her death, voluntarily fulfilled his engagements and executed a conveyance in compliance with the stipulations of the bond, his act could not have been impeached by the heirs of the wife, nor the title executed by him disturbed. The right and the equitable title of the plaintiffs in the land accrued during the existence of the community, before the death of the wife, and a deed, if voluntarily executed by the husband, after her death, would have been merely completing and carrying into effect a pre-existing arrangement which was binding upon the community and upon all who claimed an interest in the property. If then a deed (to perfect a title already accrued to the plaintiffs) voluntarily executed by the defendant, surviving partner of the community, would have been operative against the heirs of the wife, the joinder of these heirs as co-defendants does not seem to be absolutely essential to divest the shadow of title

which remained in the community and vest it in the plaintiffs. If the claim be enforced against the surviving husband, it will be effectual against the heirs of the deceased wife. They can set up no defence (with but one exception) which would not be available to the surviving husband. If he cannot, as against his own stipulations, support the defence against the plaintiffs, neither could the heirs of the wife, who receive her share of the community but charged with these identical stipulations. It must be remembered, also, that the defendant claimed the exclusive contról and title in this property. He took possession and ejected the plaintiffs, claiming in his own right. By his acts he represented not only his own, but the rights claimed by the heirs of the wife. The whole of his defence, up to the offer of amendment, was in his own right claiming full title in the property. His acts before, and his defence since, the commencement of suit, would constitute him an agent of the heirs with plenary powers in the premises. In fact there does seem to be but one contingency in which it becomes absolutely necessary to join the heirs of the wife, in a suit against a surviving husband, to enforce a contract made by him during the marriage and in reference to the property of the community, and that is where the sale by the husband has been made with an intention to defraud the wife of her rights in the community. In this aspect it might, in cases where there was a possibility of impeachment of the contract on this ground, be of consequence to the plaintiffs, that the heirs of the wife should be made defendants, in order to bind them by the decree. But there is not the most remote presumption that the contract is subject to an assault of this character. The imputation would be scandalous in the extreme. It cannot be presumed that children would charge their own father with such baseness. His struggle to retain this property is doubtless more for the benefit of his children than himself, and his attempt to amend by making them parties could not be for the purpose of securing himself by the decree from subsequent litigation on the part of his own

children.   Such a supposition is to be at once repudiated ; and yet, on no other ground is their joinder absolutely essential to a decree binding on the parties and upon all who claim an interest in the community.   There being not the most slight presumption that the amendment could have been offered with this view, we are of opinion that there was no error in refusing to receive it, as presented.   The litigation had been protracted for more than four years.   The suit had been once tried in the District Court, the judgment revised in the Supreme Court and cause remanded, and the amendment was not attempted until eighteen months afterwards, and on the very eve of trial, when the plaintiff had announced readiness, and the Court had ordered the cause to proceed.   The amendment was doubtless regarded by the Court as offered for the purposes of delay, and the joinder of the heirs of the wife not being absolutely essential to the decree, we are of opinion that it was properly refused.   (Coe v. Strambler, 15 Tex. R. ; Caldwell v. Hennen, 5 Rob. 20.)

The second ground of objection to the judgment is, that the bond of John and Rebecca Burleson was allowed to go to the jury, the defendant objecting to it on the ground that it was not authenticated as required by law for registration, and that no notice was given to defendant or his counsel, of its being filed. We are of opinion that these objections would not avail against the right of the plaintiffs to offer the instrument in evidence. The suit was founded upon the bond or agreement, and by Art. 741, Hart. Dig., when any petition, &c., shall be founded, &c., upon any instrument or note in writing, &c., such instrument, &c., shall be received in evidence without the necessity of proving its execution, unless the party by whom, or by whose authority such instrument or note in writing is charged to have been executed, shall file his affidavit in writing denying the execution thereof.   The execution of the bond not having been denied under oath, the instrument was rightly received in evidence.

Burleson v. Burleson.

The third assignment is, that the Court allowed the patent to the heirs of Jacob Burleson, though not set out in the petition, to be read in evidence.

This patent was referred to, though not set forth by metes and bounds, in the petition. Whether rightly received or not, was wholly immaterial. The facts proved, the great length of time that the plaintiffs and their ancestor had been in possession, vested in them a title to the land. Under such circumstances (as was said in our former decision) it was not for the defendant to deny that there was a valid consideration. If necessary, such consideration would be presumed to support the possession.

Another assignment is, that the Court refused to render any decree in favor of John Burleson for half the headright of Jacob Burleson.

This assignment is believed to be the first indication of a willingness on the part of the defendant to receive one-half of the headright of Jacob Burleson. In the motion for a new trial, no objection is made to the verdict on the ground that the finding was altogether for the plaintiffs and that there was no finding for the defendant. There is no evidence that the Court refused to enter judgment for defendant, or that there was a suggestion made for such judgment. Upon the evidence, we believe that the Court would have had competent authority to vest title in the defendant to the half of Jacob Burleson's headright, and should this be desired, the judgment will be re-formed to that effect. If not, judgment will be affirmed.

Ordered accordingly.