## F. M. Henry et al. v. H. L. McNew et al.

Decided April 5, 1902.

1.—Assignments of Error.

An assignment that "the court erred in overruling defendant's general exceptions and special exceptions one, two, three, four, and five to plaintiff's petition," is too general to be considered where the exceptions relate to different matters and are not such as should be embraced in one assignment.

2.—Same—Statement.

A statement under an assignment that "the petition contains no sufficient description of the land by metes and bounds or by any certain matter of description or identity and is manifestly void for uncertainty," does not point out the particular defect, and the description appearing to be sufficient on its face, the court is not called upon to search for the supposed defect.

3.—Jury Trial—Constitutional Law—Instructing Verdict.

It is not a violation of the constitutional right of trial by jury for the court to instruct a verdict where the evidence is so conclusive one way as to prohibit a finding to the contrary.

4.—Trespass to Try Title—Evidence Held Sufficient.

Evidence held sufficient to authorize the court to instruct a verdict for plaintiff in an action of trespass to try title.

5.—Deed—Description of Land—Calls.

Where a river is the north boundary line of a grant of land, and in a muniment of title the call for that line is "with the meanderings of the river," this is equivalent to the numerous calls for such meanders in the original survey, and is sufficiently definite to define the north line.

6.—Same—Description by Patent Number, etc.

Where the entire original grant is in litigation, a description of it in plaintiff's petition by giving the county where situated, name of patentee, number and date of the certificate and by whom issued, and the number and volume of the patents is sufficient to call to its aid the original survey, patent, etc., in fixing the true location of the land.

7.—Trespass to Try Title—Parties—Administrators.

Where three persons owned a tract of land subject to a vendor's lien, and one of them having died, the other two purchased the interest of his heirs, it was not necessary in an action against such two owners to foreclose the lien, brought after all the decedent's debts had been paid, that his administration should be made a party, though he had never been formally discharged.

8.—Community Property—Foreclosure of Lien—Heirs of Wife—Parties.

Where a husband acquired in his own name but as community property land which was incumbered by a lien, a foreclosure of the lien and sale thereunder after the death of the wife, in an action against the husband alone, was conclusive against the children of the wife, especially where the lien holders had no notice of the children's rights, and the land had also passed into the hands of purchasers for value without notice of such rights.

9.—Limitations—Possession Not Adverse.

Where parties hold land through and under a deed reserving a vendor's lien, they are concluded by a foreclosure of the lien in a suit against them, and can not plead the time they held the land prior to the foreclosure as a bar by limitations in an action by one claiming under the foreclosure.

Appeal from Bowie. Tried below before Hon. J. M. Talbot.

*Henry & Henry,* for appellants.

*A. L. Beaty,* for appellee.

RAINEY, CHIEF JUSTICE.—This is an action of trespass to try title and for damages brought by H. L. McNew and R. J. Thomas, appellees, against F. M. Henry, Jane B. Henry, P. G. Henry, Geo. R. Summerhill, Dudley Starks, Geo. W. Summerhill, and Pattie P. Summerhill, appellants, and W. T. Elkins, Del Hudson, Joe Green, Philip Davis, S. J. Anderson, W. N. Anderson, Rebecca E. Amis, Mary E. Carson, and G. B. Elkins.

The plaintiffs deraign title from the State. Also claimed title by ten years limitation through those under whom they claim, and further for rents, etc. George R. Summerhill was cited individually and as administrator of the estate of Wm. H. Summerhill, deceased, though plaintiff did not admit that he was then exercising the office of administrator of said estate.

Defendants F. M. Henry, Jane B. Henry, P. G. Henry, George R. Summerhill individually and as administrator of the estate of Wm. H. Summerhill, Geo. W. Summerhill, and Pattie P. Summerhill answered by general and special exception, plea of not guilty, limitation of five and ten years and also in reconvention for the land and for damages for being forcibly ejected from the land.

Dudley Starks answered by general demurrer, not guilty, and adopted the answer of F. M. Henry and others. All the other defendants failed to answer. A trial was had and under peremptory instructions a verdict was returned in favor of plaintiffs against all the defendants and judgment rendered accordingly, from which judgment F. M. Henry, Jane B. Henry, P. C. Henry, Geo. R. Summerhill in his own right and as administrator aforesaid, Dudley Starks, Geo. W. Summerhill, and Pattie P. Summerhill have appealed.

The first assignment is: "The court erred in overruling the said defendants' general exceptions, and special exceptions 1, 2, 3, 4, and 5 to plaintiffs' petition." This assignment is too general to be considered. The exceptions relate to different matters and are not such as should be embraced in one assignment. A statement under said assignment states, that "the petition contains no sufficient description of the land conveyed by the sheriff's deed; it is not described by metes and bounds and by any certain matter of description or identity, and is manifestly void for uncertainty in the description of the premises." This fails to point out the particular defect, if any, in the description of the land, and if the assignment itself was sufficient we do not feel called upon to make search for the supposed defect. The description appears to be sufficient on its face.

The second assignment of error complains of the action of the trial court in directing the jury to return a verdict for the plaintiffs. The first contention is "That under and by virtue of the Constitution of the United States and the amendments thereto, the said defendants were entitled to a trial by jury. That no person shall be deprived of their property except by due process of law." The defendants called for a

jury and paid the jury fee. The contention is not sound. It is so well settled by the decisions of our Supreme Court that where the evidence is so conclusive one way as to prohibit a finding to the contrary the trial court is authorized to instruct a verdict that the citation of cases is unnecessary.

Was the evidence of such nature as to require a submission of the case to the jury for their consideration? We think not. The plaintiffs proved title by a regular chain of mesne conveyances from the State down to themselves. Also by the ten years statute of limitation through those under whom they claim. Both plaintiffs and defendants hold under Horace Summerhill. On January 29, 1858, James Park, the then owner of the land, conveyed it to Horace Summerhill in consideration of $10,000, for which Horace Summerhill executed his three certain promissory notes for $3333.33 each, payable in twelve, fourteen, and thirty-six months respectively, and to secure the payment of the same a lien on the land was reserved in said conveyance. Horace Summerhill conveyed the land in controversy by separate deeds and separate tracts to three of his children, to wit, Geo. R. and Wm. H. Summerhill and Mrs. Amis. Beside these he had two other children, Mrs. Wilkinson and Mrs. Carson. He died in 1886. All of said children, except Wm. H., survived him. Wm. H. died in 1881 without having married. George R. Summerhill administered on his estate the same year. All the debts of said estate were paid prior to the year 1889, though no order of court was ever made discharging him as administrator. Mrs. Amis, Mrs. Wilkinson, and Mrs. Carson conveyed their interest in the land inherited from Wm. H. to Geo. R. Summerhill and F. M. Henry, which placed the entire survey in Geo. R. Summerhill, Mrs. Amis, and F. M. Henry. Geo. R. had prior to that time sold to said Henry a part of his land. In 1862 James Park sued Horace Summerhill on the purchase money notes above mentioned in Alabama. Litigation in one form or another relating to this debt continued until 1894, when Tempe Darrow compromised and settled the matter by paying $6110.19, the property inherited by her being bound therefor by reason of her father being surety for Horace Summerhill on an injunction bond given in connection with said litigation. In 1896 Fannie Caudle, the only surviving heir of W. A. Park, instituted suit against F. M. Henry, Geo. R. Summerhill, and Rebecca E. Amis to foreclose a lien on the land in controversy for a balance alleged to be due on a judgment recovered by Jas. Park against Horace Summerhill on said purchase money notes. Tempe Darrow and husband intervened, claiming that she was entitled to be subrogated to said lien having been compelled to pay the debt. The lower court gave judgment for defendants and Tempe Darrow appealed to this court, where judgment was rendered in her favor subjecting the land to her claim. See Darrow v. Summerhill, 58 S. W. Rep., 158. On error to the Supreme Court the judgment of this court was affirmed. See Summerhill v. Darrow, 57 S. W. Rep., 942. A mandate was issued from the Supreme Court to the District Court requiring an order of sale to issue,

and in case of sale to put the purchaser in possession. An order of sale was issued as required by said mandate, the land sold, Geo. M. Darrow and A. L. Beaty becoming the purchasers thereof, the sheriff executing his deed to them, and said Darrow and Beaty conveyed to appellees.

Horace Summerhill and his children had possession of the land from 1859 to 1901, cultivating, using and enjoying same and paying taxes thereon except as to the part sold to F. M. Henry, who held possession, etc., of that part from the date of his deeds, all holding possession under the deed from Parks to Horace Summerhill. Defendants introduced no evidence which in our opinion raised an issue requiring its submission

to the jury. They made many objections to the introduction of plaintiffs' evidence on which assignments are predicated and which will be hereafter noticed.

The third contention of appellants under the second assignment of error is in effect that the description of the land given in plaintiffs' petition is so uncertain and indefinite that the land can not be identified. The above map shows the boundaries of the original survey in 1841.

The north boundary line of the survey is Red River. The field notes

of the original survey call to begin at the southeast corner; thence north 1200 vrs. to a stake from which a hackberry bears north 46 E. 72-10 vrs. marked M and another bears S. 81 E. 3 vrs. marked X; thence N. 25 E. 500 vrs. to a cottonwood on the bank of the old channel of Red River from which bears a box elder S. 88 W. 7.10 vrs. marked "J. M.," and an ash bears S. 54 E. 2 2-10 vrs., marked X; thence with said channel N. 12 E. 300 vrs. N. 60 E. 300 vrs. S. 70 E. 1160 vrs. to Red River and with the river as follows: [Here is given about thirty calls for course and distance meandering the Red River to the northwest corner.] The field notes in the petition, patent, mandate, order of sale, and sheriff's deed are the same as given in the original survey except after the call S. 70 E. 1160 vrs. to Red River, instead of giving the thirty calls meandering the river by course and distance they read, "and with its meanders" to northwest corner as described in the original field notes. The call S. 70 E. 1160 vrs. to Red River fails to reach the river and stopping at the distance called for the river would be 51 varas north of that point. To continue the distance the same course the river would not be reached until getting into Arkansas; the distance it would have to be continued to reach the river is not shown. The defect in the description of the land in plaintiffs' muniments of title which appellants claim to be fatal is the omission of the thirty calls meandering the river found in the original field notes. We are unable to concur in this claim. The call in plaintiffs' muniments of title "with the meanderings of the river" is equivalent to the thirty calls in the original survey meandering the river, and is sufficiently definite to define the north boundary line and do not render the description of the land void. The evidence shows that the river is continually changing and shifting its channel. It has encroached upon this land until about 800 acres are now north of the river. The bearing trees at the northwest corner can not be found. Running the west line of the survey from the southwest corner the river is reached at 2912 varas instead of 3600 varas as called for by the original field notes and patent. This line to the river is easily found by the calls. So is the south line readily found by the calls. Also the east line except the call S. 70 E. 1160 varas does not reach the river. This last call does not materially affect the description, as under the rules of law governing surveying, the river being a natural object, the line of this call would be deflected so as to reach the river at 1160 varas, as this can be done. The land is further described by plaintiffs as "situated in Bowie County, Texas, patented to Geo. W. Lang by virtue of certificate No. 562 issued by the Board of Land Commissioners of Harrisburg County on the 7th day of June, 1838, patent No. 664, vol. 8." The entire grant being in litigation this description is sufficient to call to its aid the original survey, the patent, etc., in fixing the true location of the land. Bitner v. Land Co., 67 Texas, 341.

The evidence fully showing that the south, east, and west lines can be easily found and identified on the ground except in so far as affected by the change of the channel of the river, and the river being the north

boundary line, leaves no doubt in our mind as to the description being sufficient to identify the land sued for. What is here said applies to the objections made on the trial to the introduction as evidence of the mandate, order of sale, sheriff's deed, and other muniments of title offered by plaintiffs as to description of the land in controversy.

Many other objections were made to the introduction in evidence of the mandate, order of sale and sheriff's deed, based on alleged irregularities therein, and assignments of error are here urged thereon. These documents were regular and comprehensive enough to perform the functions for which they were intended, and there was no error in the court's permitting their introduction as evidence.

It is contended that the administrator of the estate of Wm. H. Summerhill, deceased, was not made a party to the foreclosure proceedings and his portion of the land was not affected by such proceedings, therefore the court erred in rendering judgment in favor of plaintiffs for such portion in this suit. On this point the evidence establishes, there being no conflict, that Wm. H. Summerhill died in 1881. Geo. R. Summerhill qualified as administrator of his estate. Before the year 1889 all the debts of said estate had been paid off and discharged, and Geo. R. Summerhill and F. M. Henry, who were parties to the foreclosure proceedings, had become the owners of the said portion by purchase of the interest of all of the other heirs of said Wm. H. Summerhill, except the interest of Geo. R. Summerhill, he being one of Wm. H. Summerhill's heirs. Thus the title to said portion was vested in said Geo. R. Summerhill and F. M. Henry and they so owned and held such title at the time of the foreclosure proceedings, and as such owners they were in possession, holding and claiming it as such. No formal order has been made by the provate court discharging said administrator, and this is the basis for appellants' contention in respect to this matter. When Wm. H. Summerhill died the title to his real estate vested in his heirs, subject only to the payment of his debts. When the debts were paid the functions of Geo. R. Summerhill as administrator of said estate had virtually ceased, as all the debts of the estate had been paid and possession and control of the land had been taken by said Geo. R. Summerhill and F. M. Henry. Under these conditions the probate court had no further jurisdiction of the land except for the purpose of partition, and no necessity existed for that purpose. The failure of the administrator to get a formal discharge from the probate court did not affect the title to the land. He had no interest as such in the title, and the owners of the title were the only necessary parties to the foreclosure proceedings as far as the Wm. H. Summerhill interest was concerned.

The next contention is, that part of the land was the community property of Geo. R. Summerhill and Medora, his wife, who died before the foreclosure proceedings were instituted, leaving surviving her children of their marriage who were not parties to said foreclosure suit; therefore the plaintiffs were not entitled to recover the interest of said children inherited from their mother in this suit. Geo. R. Summerhill

and wife, Medora, had children who survived the wife and are parties to this litigation. The children were not made parties to the foreclosure suit. After the death of the wife Geo. R. Summerhill continued to live on the land with his children. The legal title to this interest was in Geo. H. Summerhill, and he was a party to the foreclosure proceeding.

Were the said children concluded by said foreclosure proceeding? In the case of Carter v. Conner, 60 Texas, 52, it was held that the sale of land under execution by virtue of a judgment rendered against the surviving husband on a community debt passed the title as against the children of the deceased wife. It is clear that if the suit to foreclose had been brought during the lifetime of Mrs. Summerhill she would have been concluded by a judgment rendered against her husband though she was not a party thereto. Thompson v. Jones, 12 S. W. Rep., 77.

The surviving husband "has the right to administer the community property for the payment of the community debts without interference on the part of her legal representatives." Moody v. Smoot, 78 Texas, 119.

The lien on the land in controversy and upon which the lien was foreclosed existed when Geo. R. Summerhill acquired the land. It is true that the debt was not community debt only to the extent that the community interest in the land was subject to its payment. To this extent the community was interested, and had Geo. R. Summerhill disposed of the land after the death of his wife for the purpose of liquidating the lien the children could not have complained. If this power of disposition existed then, we take it, the action of the court in doing that which he could have voluntarily done, under the circumstances, binds the children.

We are of the opinion that the principles enunciated in the authorities cited above are applicable here, and therefore conclude that the children are concluded by the foreclosure proceeding against their father, Geo. R. Summerhill. See also Barrett v. Eastman, 4 Texas Ct. Rep., 263, and authorities there cited; Burleson v. Burleson, 15 Texas, 423.

Again the legal title was in Geo. R. Summerhill, and it is not shown that the lienholders knew or were put on inquiry as to any rights of the children. Nor was it shown that the appellees had notice of any right in the children when they purchased the land and paid a valuable consideration therefor. Cooper v. Loughlin, 75 Texas, 524; Webb v. Maxan, 11 Texas, 678; Reagan v. Evans, 21 S. W. Rep., 678; Mangum v. White, 41 S. W. Rep., 80; Puckett v. Reed, 22 S. W. Rep., 515.

Appellants claim the land by the statute of limitation and contend that they are entitled to judgment on that issue. There is no controversy about the facts as to the possession. Geo. R. Summerhill, F. M. Henry, and Rebecca E. Amis held possession of the land from 1874 until this time, claiming, cultivating, and paying taxes thereon, etc. But they are in no attitude to successfully interpose the plea of limitation in bar of plaintiffs' recovery. They hold under the deed to Horace Summerhill in which a lien was reserved to secure the purchase money. This

lien was foreclosed in a suit against them, by which foreclosure they are concluded. Darrow v. Summerhill, 57 S. W. Rep., 942.

We have carefully examined the evidence and find no conflict on any material issue that required the court to submit it to the consideration of the jury. The judgment is therefore affirmed.

*Affirmed.*

Writ of error refused.