KIDD et al. v. PRINCE et al. (No. 7435.)*

(Court of Civil Appeals of Texas. Dallas. Jan. 8, 1916. Rehearing Denied Feb. 12, 1916.)

1. COURTS ⊚⇒155 — JURISDICTION — TITLE TO LANDS.

A suit to divest title out of defendants is one to try title to land, jurisdiction of which is by Rev. St. 1911, art. 1705, in district court, though the alleged ground for divestiture be that plaintiff, survivor of the community, had from his separate estate paid debts of the community in excess of the value of the community property, of which the land in question was part, and that defendants' interest was only as heirs of deceased, their mother, and wife of plaintiffs.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 378, 402½; Dec. Dig. ⊚⇒155.]

2. HUSBAND AND WIFE ⊚⇒273—COMMUNITY PROPERTY—APPROPRIATION BY SURVIVOR.

The right of the surviving husband to appropriate the community property to reimburse himself for payment of community debts out of his separate estate is not a claim against his minor children, who have inherited a portion of their mother's interest in the community, and so need not be presented to the county court in which administration of their estate is pending, but, notwithstanding such pending administration, may be exercised by suit in the district court to divest title to such property out of them.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec. Dig. ⊚⇒ 273.]

3. GUARDIAN AND WARD ⊚⇒117—RIGHT TO SUE WARD.

Absent statute on the subject, there being only the rule that the general guardian cannot represent his wards where their interests are adverse, the general guardian of minors may maintain suit against them; he procuring the appointment of a guardian ad litem to represent them.

[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 407–410; Dec. Dig. ⊚⇒ 117.]

4. HUSBAND AND WIFE ⊚⇒273—COMMUNITY PROPERTY—APPROPRIATION BY SURVIVOR— ESTOPPEL.

The surviving husband is not estopped to appropriate community property to reimburse himself for payment of community debts from his private estate, because as guardian of his minor children in guardianship proceedings he inventoried an interest in the land as property of his wards.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec. Dig. ⊚⇒ 273.]

5. JUDGMENT ⊚⇒335 — BILL OF REVIEW — FUNCTION.

While a bill of review is a proceeding independent of the remedy of appeal or writ of error, it cannot be invoked to review errors apparent on the record of the trial court or as a means by which the facts may be retried, but its function is to review cases in the trial court when the adverse judgment is the result of fraud, accident, or mistake.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 647–663; Dec. Dig. ⊚⇒335.]

6. JUDGMENT ⊚⇒335—BILL OF REVIEW—MINORS.

The function of a bill of review, where judgment is rendered against a minor legally served and represented by guardian ad litem regularly appointed, is no greater than in the case of a person sui juris.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 647–663; Dec. Dig. ⊚⇒335.]

7. APPEAL AND ERROR ⊚⇒5—JUDGMENT ⊚⇒ 335—PROPER MODE OF REVIEW—ERROR OR BILL OF REVIEW.

The remedy against a judgment voidable because against a minor not represented by a guardian ad litem, the fact of infancy appearing on the face of the record, is by writ of error, and not bill of review.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 8–21; Dec. Dig. ⊚⇒5; Judgment, Cent. Dig. §§ 647–663; Dec. Dig. ⊚⇒335.]

8. LIMITATION OF ACTIONS ⊚⇒72 — BILL OF REVIEW—MINORS.

Under Rev. St. 1911, art. 5684, the two years in which to institute a bill of review does not in the case of a minor commence to run till he attains majority.

[Ed. Note.—For other cases, see Limitation of Actions, Cent.Dig. §§ 390–398; Dec.Dig. ⊚⇒72.]

9. APPEAL AND ERROR ⊚⇒1040—HARMLESS ERROR.

Error in sustaining special exceptions to the petition is harmless, if the general demurrer was properly sustained.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089–4105; Dec. Dig. ⊚⇒ 1040.]

10. JUDGMENT ⊚⇒335—BILL OF REVIEW—ALLEGATIONS.

A bill of review based on fraud must allege facts sufficient to show that, if true, complainant would have had judgment in the original action but for fraud of his adversary.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 647–663; Dec. Dig. ⊚⇒335.]

11. JUDGMENT ⊚⇒335 — BILL OF REVIEW — ALLEGATIONS—FRAUD.

The mere allegation of a bill of review that the alleged fact on which the judgment was based, that land was community property, was untrue, is insufficient; but facts in relation to the title supporting the charge of fraud, such as the source of the title, or facts precluding the claim that it was community, should be alleged.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 647–663; Dec. Dig. ⊚⇒335.]

12. JUDGMENT ⊚⇒335—BILL OF REVIEW—EXCUSING FAILURE.

A bill of review based on fraud must make some explanation of failure to urge at the trial the falsity of allegations or testimony on which the judgment was based, showing that complainants were without fault or were hindered or obstructed, or had newly discovered evidence which they could not with reasonable diligence have discovered at the trial.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 647–663; Dec. Dig. ⊚⇒335.]

13. HUSBAND AND WIFE ⊚⇒273—COMMUNITY PROPERTY — APPROPRIATION — "COMMUNITY DEBT."

Money spent by the surviving parent from his individual estate for the support of his children of whom he was guardian is not a community debt for which he can appropriate community property to reimburse himself.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec. Dig. ⊚⇒ 273.

For other definitions, see Words and Phrases, First and Second Series, Community Debt.]

**14. JUDGMENT** ⊜═335 — BILL OF REVIEW — PRESUMPTION.

Where the petition alleged two grounds, one of which would, and the other would not, support the judgment, it will be presumed on bill of review that the judgment was based on the proper ground, and that the allegations of fact respecting it were established by the evidence.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 647–663; Dec. Dig. ⊜═335.]

Error from District Court, Ellis County; F. L. Hawkins, Judge.

Proceeding by Bettie Kidd and others against E. B. Prince and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

J. L. Gammon, of Waxahachie, and Brooks & Worsham, of Dallas, for plaintiffs in error. Farrar & McRae, of Waxahachie, for defendants in error.

RASBURY, J. In this proceeding the general demurrer and certain special exceptions leveled against the petition of plaintiffs in error were sustained by the trial judge. The plaintiffs in error declined to amend, and the cause was dismissed. From the action indicated, appeal has been perfected to this court.

Since the action of the court as related is to admit the truth of the allegations of the petition, but to decree as matter of law that they fail to disclose a cause of action, we will not copy the petition with its formalities and exhibits, but relate in condensed form the essential facts deducible therefrom. Those facts are, in substance, as follows: B. F. Thornhill married Mrs. Sue Lancaster, in the year 1881. She died intestate in Ellis county in the year 1896. There was no administration upon her estate. Surviving her, as sole issue of her marriage with Thornhill, was Alice, Bettie, Frankie, and Manning Thornhill. As the sole issue of her former marriage, she was survived by Mary and Johnnie Lancaster. When she died, she was seised of a one-half interest in certain community estate of herself and husband, B. F. Thornhill, in Ellis county, consisting in part of lands. After the death of his wife and in the year 1896, Thornhill was appointed guardian of the estate of his minor children by the county court of Ellis county, and qualified as such. On July 11, 1898, Thornhill, in connection with appraisers appointed by the county judge, filed in the guardianship proceedings an inventory and appraisement of the estate of his wards showing that his wards owned an undivided one-third of certain lands, among them being the land in controversy in this suit, which was the homestead of Thornhill and wife at the time of her death, and will hereafter be designated as such.

Subsequent to the foregoing, J. O. Hammett and wife (formerly Mary Lancaster), and Johnnie Lancaster, Mrs. Thornhill's children by her first husband, sued B. F. Thornhill and his minor children, Frankie, Alice, Bettie, and Manning, in cause No. 3801, district court, Ellis county, for partition of the estate of Thornhill and wife. J. L. Gammon was appointed guardian ad litem for the minor children of Thornhill, and the interest of each party to the suit in the several tracts of land involved was declared and determined. As to the homestead tract, the court found that B. F. Thornhill was entitled to an undivided one-half, his children, Alice, Bettie, Frankie, and Manning, to an undivided one-twelfth each, and that Mary Hammett and Johnnie Lancaster were entitled to one-twelfth each. By agreement of the parties and upon approval of the court, Mary Hammett and Johnnie Lancaster relinquished to B. F. Thornhill their right, title, and interest in the homestead, and as compensation therefor Thornhill relinquished to Mary Hammett and Johnnie Lancaster his life estate in and to certain other lands set aside to them. The ownership of the homestead was then decreed to be eight-twelfths in Thornhill and four-twelfths in his minor children. Being the homestead, the court found it was not subject to partition at that time, and that the interest of Thornhill's children therein was subject to his homestead right.

Following the foregoing suit, Thornhill, in cause No. 6824 of the district court of Ellis county, sued his children and wards, Bettie, Frankie, and Manning, Alice having died after the death of her mother intestate and unmarried, averring the death of his wife, his appointment as guardian of the estate of his children, the existence of a community estate, a part of which was the homestead, and his acquisition of the interest therein of Mary Hammett and Johnnie Lancaster. He also averred that the probate court had allowed him as guardian $5 per month for each ward for his or her support and maintenance, and that he had expended at the time his petition was filed out of his separate estate more than such allowance for said purpose and which was more than the value of his ward's estate as shown by his inventory. He also alleged that subsequent to the death of his wife he had, out of his separate estate, paid more than $3,000 of community debts, which was a charge against the community estate and in excess of the interest of his wards therein. He prayed for citation to his wards, that a guardian ad litem be appointed to represent them, and that upon hearing he have judgment divesting title out of his said wards to the land in controversy and vesting same in him. The wards were legally served with citation. John D. McRae was appointed guardian ad litem for the said wards in said

proceeding. Upon hearing judgment was for Thornhill, the record reciting that "the court finds the material allegations of plaintiffs' petition to be true" and that plaintiff is "entitled to the relief prayed for. Wherefore it is considered, ordered, adjudged, and decreed by the court that all the right, title, and interest which the defendants" (naming them) have in the land in controversy in this proceeding "be and the same is divested out of them and each of them and. vested in plaintiff B. F. Thornhill."

Approximately six years subsequent to the judgment just detailed, the instant suit was filed by Bettie Kidd (joined pro forma by her husband, Walter Kidd) and the State Bank & Trust Company of Waxahachie, guardian of the estate of Manning Thornhill. Incidentally, Thornhill, who married again after the death of his wife Sue prior to the commencement of the instant suit, died testate and bequeathed the homestead to his wife, Kate Thornhill. His will was probated, and E. B. Prince qualified as executor thereunder. The suit is against such executor, Mrs. Kate Thornhill, and Sterling Spaulding, guardian of the estate of Frankie Thornhill. The object of the suit is to revise, vacate, annul, and set aside the decree by which the wards and children of B. F. Thornhill were divested of the title to the homestead, and to remove from said title the cloud cast thereon by said proceeding, and to recover from Mrs. Kate Thornhill, sole legatee of B. F. Thornhill, their interest in said lands, and that the land, not being susceptible of partition, be sold, and the proceeds thereof divided among those entitled thereto. The grounds urged as basis for the relief sought are set out at length in the petition, but inasmuch as no question of the sufficiency of the pleading in that respect is raised, and inasmuch as the several assignments of error disclose such ground with sufficient particularity, it will not be necessary to set out the issues raised by the pleading.

[1] The first issue presented is that the court erred in sustaining the general demurrer of defendants in error for the reason that the district court of Ellis county was without jurisdiction to· divest the minors of title to the homestead while the estate of said minors was being administered by the county court and which homestead defendant in error was in possession of as guardian of such wards. Waiving for the time all other issues which are urged as important in determining the jurisdiction of the district court, we will consider the object of the suit, since that fact must ordinarily be controlling. The relief sought, as disclosed by Thornhill's petition, is, as we have shown, to divest title which in effect is the trial of title to land. Jurisdiction of such suits is by article 1705, R. S. 1911, conferred exclusively upon district courts. It appears from Thornhill's petition that the homestead was part of the community estate of Thornhill and wife at the time she died, and that his wards and children inherited from his wife, burdened with the community debts, an undivided four-twelfths interest therein, and that Thornhill owned eight-twelfths; he having, as we have shown, acquired from his wife's children by a former husband their two-twelfths interest therein. The grounds alleged for divesting title was that he had paid community and other debts out of his separate estate in excess of the value of the interest of his wards and children in the land, but clearly that fact did not change the purpose or object of the suit, or make it any the less a suit involving the trial of title to land. Free then from any other complications, and based solely upon the relief sought by the suit, we think it demonstrably clear that the district court had cognizance of the proceeding.

[2] But it is argued by the plaintiff in error that the effect of the proceeding so begun and effectuated was an attempted sale of the wards' property by the district court pending administration of their estate in the county court. Such a result, in our opinion, is neither directly nor indirectly presented by the record. If it did so appear, we readily concede it would be ineffectual to divest title, for ordinarily minors, pending administration, cannot be divested of title to lands save in payment of some duly approved and allowed debt they owe or for support and maintenance, and upon a sale by the county court ordered in the manner directed by the several statutory provisions in that respect. But the claim of Thornhill was not a claim against his wards, and, had it been presented to the county judge for allowance, acting lawfully, he would have been compelled to disallow same. Thornhill's wards were in no respect liable for the community debts of their parents, nor were they bound to reimburse ·Thornhill for any such debts he may have paid. They might have done so, and perhaps had that right had it appeared that their interest in the homestead reasonably exceeded the amount of the debts; but it affirmatively appears from the record that the debts were largely in excess of their interest in the homestead. Nor was the debt similar in any sense to lien claims or mortgages as they are ordinarily understood and which must, pending administration, be presented and allowed, and the land sold in the usual manner. In our opinion Thornhill's rights under the allegations of his petition are certain and fixed, and arise and exist and may be exercised independently of and free from interference by the probate court upon the sole condition that he at all times proceed fairly and without detriment to the estate. Without reference to the manner of procedure which he may adopt to accomplish the result, and waiving for the moment whether pending administration would af-

fect such right, it is conceded by all authority in this jurisdiction that the survivor of the community estate has the legal right to sell or appropriate the community estate to reimburse himself for community debts paid out of his separate estate. Leatherwood v. Arnold, 66 Tex. 414, 1 S. W. 173; Martin v. McAllister, 94 Tex. 567, 63 S. W. 624, 56 L. R. A. 585; Jennings v. Barton, 44 Tex. Civ. App. 280, 98 S. W. 445. Repeated similar decisions will be found in the books, and the cases are intended as typical of the rule, rather than exhaustive of the holdings. It is also the rule that the survivor in community has the same control thereof, without qualifying as community survivor under the statute, that he or she would by such qualification. Wiseman v. Swain, 114 S. W. 145. Also, it has been held that a sale of community lands by the survivor to pay community debts concludes the right of a minor child. Wolf v. Gibbons, 69 S. W. 238.

Then does the fact that administration had been granted upon the estate of the minors, and that they had inherited a portion of their mother's interest in the homestead, subject to the charge against same for the payment of the community debts, circumscribe or modify the right of the survivor to proceed in the manner indicated in the preceding portions of this opinion? We have been unable to find but one case that bears exactly upon the point in issue, but that case seems conclusive of the issue. Moody, Adm'r, v. Smoot, 78 Tex. 119, 14 S. W. 285. In that case Moody, as administrator of the estate of Amanda C. Hay, and as next friend of her two minor children, sued John C. Hay, the surviving husband and father of the minors. The object of the suit was to enjoin Hay from selling certain personalty alleged to be a part of the community estate. Injunction was issued, but upon hearing was dissolved, and Hay proceeded to sell the property. By amendment the purchaser of the property was made a party defendant to the suit. Prayer was for a recovery of the property belonging to the community estate to be administered by Moody for the payment of community debts, and for alternative relief. Among others, the trial court sustained a special exception which asserted that Moody, as administrator of the estate of Hay's wife, had no right to the possession or control of the common or community property. The Supreme Court, speaking through Mr. Justice Gaines, said: "This presents a question which seems never to have been decided in this state." The court then proceeds to review certain adjudicated cases bearing upon the rights of the survivor in community, as well as certain subsequent statutory enactments, and concludes that by the subsequent acts the survivor's authority in dealing with the common property was enlarged. Resuming the discussion of the correctness of the trial court in sustaining the special exception noted, the court say:

"The wife's interest in the common property after the community debts are paid is equal to that of the husband. He has the sole management during the life of his wife, but it is a mistake to assume that it is only in this respect that their rights and obligations in regard to that property differ. His control of it during her life is absolute. Barring any disposition made with intent to defraud her, he may sell, barter, or give it away. All debts contracted by him he is liable to pay, not only from the community estate, but also from his separate property, and he is subject to be sued therefor both before and after his wife's death. The community debts are his debts, but are not ordinarily the debts of the wife, except in the sense that the community property is burdened with the liability for their payment. Being liable to a suit on the community obligations and to have his separate property sold under execution for their payment, it is but reasonable that upon the death of the wife he should have the right to administer the common estate for the payment of the common debts without interference on part of her legal representatives. Upon the death of the wife, he occupies the relation of a surviving partner in an ordinary partnership. * * * The case of the wife upon his death is different. She, it is true, is a surviving partner; but as a general rule she is personally liable for none of the debts of the partnership. It follows therefore, in our opinion, that while his administrator should have the right to administer the common property and to apply it to the payment of his debts, it was never contemplated that the administrator of the wife, so long as he survived, should have the same right. The laws of Louisiana in relation to the community estate of the husband and wife are very similar to those of our state, and the Supreme Court of that state distinctly held that the administrator upon the estate of the deceased wife has no control over the community property so long as the husband survives. Hawley v. Bank, 26 La. Ann. 230; Williams v. Fuller, 27 La. Ann. 634. If it should be urged that the administrator of the estate of the deceased wife should have control at least of the wife's half of the community in order to subject it to the payment of her debts, the reply will be that her debts are all chargeable upon the community property and may be enforced against it by a suit against the husband. * * * It follows from what we have said that in our opinion appellant Moody as administrator had no right to prosecute this suit as to so much of the property as was the community property of John D. Hay and his wife."

The rule announced by the Supreme Court is reaffirmed in Cullers v. May, 81 Tex. 114, 16 S. W. 814, and in Henry v. McNew, 29 Tex. Civ. App. 288, 69 S. W. 217.

In conclusion of the discussion of the rights of the survivor to appropriate the common property in payment of community debts, it may be said that it occurs to us that the method pursued by Thornhill was the one most calculated to secure fair dealing and preserve other property, if any there was. The survivor is not bound to pursue any fixed or peculiar method for the appropriation, since, as said in Leatherwood v. Arnold, supra, "the means of accomplishment are as varied as the circumstances and discretions of men." But we do gather from the expressions contained in Martin v. Mc-

Allister, supra, that the method pursued by Thornhill is approved.

[3] It is next urged, in effect, that Thornhill was incapable in law of maintaining the suit filed against his wards, and that the district court should have dismissed same for the reason that he was at that time the duly qualified and acting guardian of his said wards. The record does disclose the facts included in the proposition. On this issue we have but little authority to guide us. Prior to 1895 it was definitely provided that in all proceedings where the general guardian had an interest adverse to his ward a special guardian or guardian ad litem should be appointed. Article 6973, Paschall's Dig. Laws. This statute, however, was not in force at the time the Thornhill case was adjudicated. The only law in force on the subject at that time was article 4124, R. S. 1911, being a portion of the act governing guardian and ward, which declares that a part of the powers and duties of guardians is the right "to bring and defend suits by or against him"; and article 1942, R. S. 1911, directing that in all cases where a minor, etc., is defendant in a suit and has no guardian within the state, it is the duty of the court in such cases to appoint a guardian ad litem for the minor. The latter article, however, gives no direction in case the interests of the general guardian, as in the Thornhill suit, is adverse to those of his ward, as did the former statute. Hence there was not at the time Thornhill filed his suit, nor is there now, any statutory rule covering the exact situation presented in that suit. That the general guardian in any proceeding at law or in equity is disqualified to represent his ward when their interests are adverse is clear in reason, and it has been so decided. Sandoval v. Rosser, 86 Tex. 682, 26 S. W. 933.

However, the question was, in effect, decided in Shiner v. Shiner, 15 Tex. Civ. App. 666, 40 S W. 439, in which case a writ of error was denied by the Supreme Court. In that case it appears that, when the executors of the estate of Emma Shiner applied to the county court for partition and distribution of the estate under the provision of her will, there arose among the distributees a difference. An appeal from the distribution ordered in the county court was taken by some of the distributees to the district court. Prior to the partition and distribution in the county court, M. C. Shiner was appointed general guardian of his children, Milton, Gordon, and Vernon, as well as general guardian of his nephews, J. D. and Walter Shiner. By the will of Emma Shiner, M. C. Shiner's children were to receive one-sixth of her estate, which was to go to M. C. Shiner in case his children died before reaching 21 years of age. By the will, also, his nephews were to receive one-sixth of the estate. In the district court the judge would not per-

mit Shiner, the general guardian, to represent his nephews, and George C. Altgelt was appointed guardian ad litem to represent them in the partition. Being dissatisfied with the judgment of the district court, Altgelt appealed. In the Court of Civil Appeals, Altgelt's right to appeal was challenged, presumably on the ground that, there being a general guardian for the minors, the appointment of Altgelt was unlawful, though the ground is not disclosed by the opinion. The court say:

"So far as the appointment of such representative for the minors J. D. and Walter Shiner is concerned, we believe it was proper and authorized, under the facts. Their regular guardian was M. C. Shiner, to whom was devised the one-sixth interest of his children in the event of their death before reaching 21 years of age. He was interested, therefore, against J. D. and Walter Shiner, in obtaining for his children an advantageous allotment. By the statute of 1870 (Paschal's Digest, 6973), it was expressly provided that the regular guardian was ineligible to represent his ward, if he was a party to the proceedings in his own right, or had an interest adverse to that of the ward. The existing statutes contain no such restriction. We believe, however, that, where the statute does not expressly declare a guardian so circumstanced to be capable of defending the interest of the ward, the disqualification of being adversely interested should be recognized, on well-settled legal principles. Sandoval v. Rosser, 86 Tex. 685, 26 S. W. 933. This being so, the court properly regarded him as not entitled to defend for these minors, and treated the case as one requiring a guardian ad litem for them. The guardian so appointed was authorized to take the appeal, and the case is properly here for revision."

As relates to Thornhill's case, we conclude that other grounds both in reason and necessity existed for the court pursuing the course it did. Our statutory laws recognize the parents of children as their natural guardians and in directing who shall administer the estates of minors prefer the parents in that respect. The reason is clear, since the promptings of nature ordinarily inspire in the parents a greater degree of care and integrity in the administration of the estate of their children than obviously would repose in a stranger. At the same time, as we have shown in this opinion, when the surviving parent undertakes to appropriate the community estate for the payment of community debts, an interest adverse to his children arises, and as said in Sandoval v. Rosser, supra, the general guardian is incompetent to represent his wards. But it seems to us that the situation can be met and the rights of the wards safeguarded without pursuing the extreme remedy of requiring the general guardian, in all other matters best qualified to represent his wards, to resign the trust; an eventuality which would entail upon the wards the additional expense resulting from a change of general guardians. As we have said at another place, we are without statutory rule in such cases; neither a statute providing for the appointment of a guardian ad litem, nor one denying the general guardi-

an the right to maintain the suit pending guardianship if the wards are otherwise fairly and legally represented. The most we have is the rule of decision that the general guardian cannot represent his wards when their interests are adverse. Being then without a statutory rule of action, it occurs to us that the instant case presented an occasion for the exercise of the inherent power of the court. Such inherent power has always included the right to appoint a guardian ad litem to represent minors, etc., as was done in the instant case. And in connection with the course pursued by the trial court, if it is true, as has often been said, that the law regards substance rather than form, then it can truthfully be said that Thornhill's resignation as general guardian would have been a formal and useless thing, when it is considered that even after his resignation he would have been equally incapable of defending the suit for his children, and the court would have been called upon to do the identical thing it did do. It is not, nor could it be intelligently, claimed that Thornhill did not have a cause of action if the allegations of his petition were true; nor is it claimed that cause of action was lost because he was guardian of his children. The claim in the last analysis is that he could not maintain it because he was incapable of defending it for his wards. The answer, it seems to us, is that he could not have done so had he resigned. Such a situation, it seems to us, was properly and legally met when the court in the exercise of its inherent power appointed a guardian ad litem to represent his wards. No other course consistent with his rights and those of his wards could have been properly pursued.

[4] It is next urged that Thornhill, having in the guardianship proceeding inventoried the land sought to be appropriated for the payment of community debts as the property of his wards, could not subsequently dispute their title thereto. We conclude that the act of Thornhill in the respect stated did not prevent him appropriating the land for the purpose sought. It was correct to disclose all interest of his wards in the inventory, certain or contingent; but the performance of that duty would not, if the contingency arose, prevent him from enforcing against his wards' interest in the land the superior interest he had therein. However, the point has been finally settled by prior decisions of the appellate courts of this state. Koppelmann v. Koppelmann, 94 Tex. 44, 57 S. W. 570 and cc.

[5-12] It is next urged that the court erred in sustaining two special exceptions leveled against the sufficiency of the petition in the instant suit. The first exception asserts, in effect, that an equitable proceeding by bill of review cannot be maintained for the purpose of correcting errors apparent upon the record in the Thornhill suit, since the remedy in such cases is by appeal or writ of error, and

since it also appears from the petition that the Thornhill judgment was entered approximately six years prior to the commencement of the instant suit, and hence all right of review lost by the lapse of time. The second exception, in effect, asserts that the instant suit, which seeks by the equitable proceeding of bill of review to set aside the judgment in the Thornhill case, cannot be maintained, since it appears from the petition that plaintiffs in error were personally and legally served with citation, appeared by guardian ad litem duly appointed, joined issue, introduced evidence, and failed to appeal from the judgment rendered, which was their remedy, and since it also appears from said petition that approximately six years elapsed after the rendition of said judgment before the commencement of the instant suit, whereby the same became and is a final judgment. While a bill of review is a proceeding independent of the remedy of appeal or writ of error, it cannot, as we understand its purpose in this jurisdiction, be invoked to review errors apparent upon the record of the trial court or as a means by which the facts may be retried in an adjudicated case. Seguin v. Maverick, 24 Tex. 526, 76 Am. Dec. 117; Talbert v. Barbour, 16 Tex. Civ. App. 63, 40 S. W. 187. It is an equitable proceeding, its recognized function being to review cases in the trial court when the adverse judgment is the result of fraud, accident, or mistake. McMurray v. McMurray, 67 Tex. 665, 4 S. W. 357; Kruegel v. Cobb, 124 S. W. 727. It also appears that minors, where they have been legally served with citation and appear in the proceeding by regularly appointed guardians ad litem, are affected by the rule in the same manner that persons sui juris are. Jones v. Parker, 67 Tex. 76, 3 S. W. 222. In that case it was said:

"If the appellee was in fact a minor at the date of the judgment, as the petition alleges, then, in order to estop him by the finding by the court of a jurisdictional or other fact, he must have been represented by a guardian ad litem. At common law, a judgment rendered against an infant not so represented, although he is served with process, is voidable; and it would seem that a motion for the purpose, or a writ of error coram nobis, is an appropriate remedy in the court where rendered in order to set it aside. * * * That such a judgment is irregular and erroneous is recognized by our own courts. Pucket v. Johnson, 45 Tex. 550; see, also, Wheeler v. Ahrenbeak, 54 Tex. 535. A writ of error is the proper remedy to vacate such a voidable judgment in the district court, if the fact of the defendant's infancy appeared upon the face of the record."

However, notwithstanding our conclusion in the preceding pages of this opinion that Thornhill was authorized to appropriate the land in payment of community debts by the method he did, that the district court had jurisdiction of the proceeding, that the pending guardianship was no impediment to his right, that Thornhill, while general guardian of the minors, could maintain the suit by serving his wards with citation and procur-

ing the appointment of guardian ad litem, and that the minors were bound to review all errors apparent of record by appeal or writ of error, it was error to sustain the special exceptions complained of. The petition did allege that the Thornhill judgment was procured by fraud. Suits by bill of review to set aside and annul judgments of trial courts on the ground of fraud, accident, or mistake may be begun at any time within two years after the rendition of the judgment sought to be avoided. Best v. Nix & Storey, 6 Tex. Civ. App. 349, 25 S. W. 130. While the petition in the instant suit does disclose that at the time the suit was commenced approximately six years had elapsed since the rendition of the Thornhill judgment, it also discloses that one of the plaintiffs in error, Manning Thornhill, was yet a minor; and while it discloses that the other plaintiff in error, Bettie Kidd, née Thornhill, is a married woman, it fails to disclose that she had reached 21 years of age before or after her marriage and if after her marriage that two years had elapsed between the time she became 21 years of age and the time she begun her suit. Such a state of facts would have to be disclosed by the record before the trial judge could have properly sustained the special exceptions. Article 5684, R. S. 1911. However, it will be seen from our statement of the case that the trial judge sustained a general demurrer to all the allegations of the petition, including the allegations of fraud on the part of Thornhill in procuring his judgment, save as to the matters enumerated in the special exceptions. Hence it follows that the error in sustaining the special exceptions is obviously harmless if the allegations of fraud, taken as true, are insufficient to show a cause of action as ruled by the trial court.

Accordingly, we are brought to a consideration of that precise issue. After alleging generally that the proceedings in the Thornhill suit were null and void, and after specifically alleging the matters we have already disposed of, the plaintiffs in error on the issue of fraud aver as follows:

"Because the allegations in said petition that the property therein described constituted the community property" of Thornhill and wife "was wholly untrue and contrary to the decree entered in case No. 3801, wherein the interest of these plaintiffs in said property had been duly adjudged and determined," * * * and "because the allegations that the plaintiff had expended large amounts out of his own private funds for their support and maintenance in excess of the amount made (allowed) by the county court were false and untrue and fraudulently made for the purpose of inducing the said district court to render and enter said decree, and that the said district court was induced thereby to make and enter said decree, and that the same would not have been entered except for said false and fraudulent allegations and the false testimony offered in support thereof."

As will be seen, the foregoing has reference to the allegations of fact contained in Thornhill's petition in the suit in which he divested title out of his wards, and it is necessary to an intelligent consideration of the issue that said allegations also be disclosed. Those attacked by plaintiff in error are as follows:

"That at the time of her death said Sue Thornhill was seised and possessed of a one-half community interest in and to certain lands in Waxahachie, Ellis county, Tex.," being the lands in controversy, "plaintiff being the owner of the other one-half thereof, subject to community debts in excess of $3,000."

Thornhill then alleges in his petition that he was appointed guardian of his four minor children and had been allowed $5 each for the support of the minors, and that he had expended in excess of the sums so allowed for the benefit of said wards the sum of $500, a sum also in excess of the value of his wards' interest in the community estate. He also further pleaded:

"That, since the death of his said wife, he has paid out of his separate estate community debts of himself and Sue Thornhill more than $3,000, which sum he alleges is largely in excess of the community interests of defendants in the property above described," being the property in controversy; "that having expended and paid out community debts largely in excess of the community property, and having paid out for the benefit of his minor children out of his separate estate in excess of the value of the interest of the defendants or either of them in said lands, they have no equity in or to the same."

These allegations were followed by appropriate prayer for divestiture of title. We will discuss first the issue made by the pleading that the claim in Thornhill's suit that the property was not in fact community and was contrary to the decree in case No. 3801, the partition suit. The pleading alleging that the land was not the community property of Thornhill and wife is in the light of the adjudicated cases clearly insufficient. In an equitable proceeding such as the instant case, facts must be alleged sufficient to show that, if true, the complaining party would have recovered in the original suit but for the fraud of his adversary. The mere allegation that facts upon which the judgment was based were untrue is not sufficient. Plaintiffs in error should at least have alleged some fact or facts in relation to the title that would support the charge of fraud, such as the source of title to the land in controversy, or facts relating to the title that would have precluded the claim that it was community or common property. Or that it was the separate property of their deceased mother or their separate property, together with the facts or chain of title that, if true, would have established title. Even had the foregoing essentials been complied with, it would also have been necessary to make some explanation of the failure to urge such matters at trial, or to have shown that plaintiffs in error were without fault or were in some way hindered or obstructed in that respect, setting out the facts which so hindered, obstructed, or prevented the de-

fense. Or if it had been claimed that the testimony upon which the judgment was based was false, it should have appeared from the petition that plaintiffs in error were unable to or prevented from showing such falsity, alleging how they were so unable or prevented; or that they had discovered since the former trial other testimony, stating it, which would produce a different result, which they could not, in the exercise of reasonable diligence, have discovered at the former trial. Overton v. Blum, 50 Tex. 417, Kruegel v. Cobb, 124 S. W. 723.

[13, 14] The next issue made by the plea of fraud is that Thornhill's claim that he paid out $500 in the support and maintenance of his wards is also untrue. This allegation is also insufficient for the reasons we have just stated in reference to the property being community. However, if the judgment in the Thornhill suit was dependent for its validity upon proof of such allegations, the judgment could not be sustained, for the obvious reason that money spent by a parent and guardian for the support of his wards and children is in no sense a community debt, and we believe it would be to hold something never contemplated by the rule to say that such a debt was a charge against the community upon which could be based divestiture of title to or a sale of the community property. We cannot, however, assume that the trial court based its action upon such allegations. On the contrary, we must presume that the trial court based its action upon grounds alleged in the petition that would permit him legally to do that which he did do. The trial court could legally have divested title on the allegation that the property was community and that Thornhill had paid community debts amounting to $3,000 subsequent to the death of his wife out of his separate funds. He alleged as much, and the presumption is that he established the allegations as a fact. Incidentally, the allegation of Thornhill that he paid $3,000 of community debts and by which the judgment of the court is sustained is in no respect challenged by the plaintiffs in error in their petition.

We are unable to see how the proceedings in the partition suit, No. 3801, affected Thornhill's right to appropriate the homestead in payment of community debts. There was no partition of the homestead. In fact, the court held it was not subject to partition. The finding by the court of the respective interests therein of Thornhill and his children was but declaratory of the law of descent. He could, as consistently, have found in his judgment that all community property, not exempt, was subject to the payment of community debts. Neither finding was necessary, however; nor did the finding affect Thornhill's remedy.

Finding no reversible error in the record, the judgment is affirmed.

---

⊙⊶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied February 9, 1916. Application for writ of error pending in Supreme Court.